Danny WOODWARD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 97–SC–741–MR.

Supreme Court of Kentucky.

Oct. 15, 1998.

Order Published by Supreme Court Jan. 21, 1999.

Rehearing Denied Jan. 21, 1999.

William F. Polk, Jr., Henderson KY, for appellant.

A.B. Chandler III, Attorney General, William L. Daniel II, Assistant Attorney General, Criminal Appellate Division, Frankfort KY, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Woodward, the County Judge Executive in Hopkins County, of malfeasance in office and reprisal against a public employee. He was sentenced to a five hundred dollar fine on each count.

The questions presented are whether Woodward was denied the right to impeach witnesses; whether the trial court should have granted a directed verdict on the malfeasance in office charge; whether the jury instructions regarding malfeasance in office were proper; whether the trial court should have granted a directed verdict on the charge of reprisal against a public employee and whether the jury instruction on the offense of reprisal against a public employee was proper.

Holzhauser owned property on the Green River in Hopkins County which was evidenced by a deed executed on March 1, 1994. Shortly after purchasing the land, Holzhauser went to Woodward's office and asked him if the county road department would upgrade a road on his property. Holzhauser sought to improve the road so that people would have easier access to the boat ramp that was on his property. The improvements would also allow easier access to the bait shop he intended to build on his land.

Following that meeting, Woodward directed Champion, the Hopkins County road department supervisor, to figure out what work needed to be performed. Champion reported back to Woodward that the road and the ramp were not county roads. Despite this information and without further investigation Woodward ordered that the work be undertaken.

Ray, the assistant road foreman for the county road department, was responsible for maintaining the records of the road department. He believed that the work being performed was improper because the road was privately owned. Ray reported his concerns to the county attorney and to some members of the fiscal court.

After the project was completed, Woodward directed Champion to meet with his workers and order them to stop talking about the project or they would be fired. On September 5, 1994, Woodward sent Champion a letter directing him to remove Ray from

his supervisory position, to revoke his use of a road department truck and to bring the computer Ray used to keep road records to his office. After a Kentucky State Police investigation, Woodward was convicted of malfeasance in office and reprisal against a public employee. He has remained in office pending this appeal.

Woodward argues that the trial court erred by excluding evidence that a conviction would result in his removal from office. Thus, he maintains that he was denied the right to impeach witnesses by showing their motive for testifying against him. We disagree.

■ The statutory penalty for each of Woodward's convictions was a fine of up to one thousand dollars. KRS 61.170(1). Woodward's possible removal from office if convicted was not a matter for the jury to consider. Neither the prosecutor, defense counsel, nor the court should relate to the jury the future consequences of a particular verdict anytime during a criminal trial. *See Payne v. Commonwealth*, Ky., 623 S.W.2d 867, 870 (1981); *See also Mitchell v. Commonwealth*, Ky., 781 S.W.2d 510, 511 (1989); *Commonwealth v.. Steiber*, Ky., 697 S.W.2d 135, 136 (1985). The trial court properly excluded references to future consequences of a conviction by the jury.

Woodward's claim that *Payne supra, Mitchell supra,* and *Steiber, supra,* are distinguishable because those cases concern DUI convictions and the insanity defense is unpersuasive. Further, other than the restriction which prevented the jury from hearing about the future consequences of the conviction, Woodward was free to demonstrate witness bias to the jury. No error occurred.

Woodward asserts that the trial court erred by not granting him a directed verdict on the malfeasance in office charge. He claims that an essential element of malfeasance, either evil intent or gross negligence as to be the equivalent of fraud, was not proven.

■ On a motion for a directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991). If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. *Id.* Here, there was sufficient evidence to support the conviction.

■ *Bailey v. Commonwealth*, Ky., 790 S.W.2d 233 (1990), enumerates the elements of the crime of malfeasance of a county officer. To be guilty of this crime a person must be (1) a county officer, (2) perform an official act, (3) the act must be wrongful, unjust or constitute gross negligence. *Id.* at 235.

■ There is no dispute that Woodward is a county judge executive and that his ordering the work to be performed was an official act. The only element at issue was whether the work ordered was wrongful, unjust, or constituted gross negligence. Holzhauser, the owner of the property in question, testified that the deed to the property was put into his name on March 1, 1994. He also acknowledged speaking directly with Woodward about having the road improved because he wanted better access to the bait shop he intended to build.

KRS 178.010(b) provides the only manner in which a road may become a county road. There was no evidence that the Hopkins County Fiscal Court ever accepted this road into the county road system pursuant to this statute. Chapter 171 of the Kentucky Constitution does not permit a county to improve the property of a private citizen. In addition, the Hopkins County Administrative Code, Section 630.5 states that "county road equipment or materials may not be used to work on private roads with or without compensation." KRS 178.405 does allow for a private road to become a public road through public use if that use is continuous for fifteen years and so long as 55% of all property owners whose property abuts the road consent to the dedication of the road to public use. However, KRS 178.410 requires that the fiscal court determine if the conditions of KRS 178.405 have been fulfilled. Further, KRS 178.425 states that sections 178.405 to 178.425 do not apply to any roads which are

dead-end passways with less than four platted lots.

There was no evidence that the road in question has ever been accepted into the county road system. Woodward never consulted the county attorney about the legality of the project even after the supervisor of the county road department told him that the road was not part of the county system. The evidence presented clearly showed that the work which Woodward ordered to be performed, in his official capacity, violated both the laws of Kentucky and the regulations of Hopkins County. There was sufficient evidence to demonstrate a wrongful and unjust intent. The trial court properly submitted this issue to the jury.

Woodward contends that the trial court erred in its instructions to the jury on the offense of malfeasance in office. Relying on *Holliday v. Fields*, Ky., 210 Ky. 179, 275 S.W. 642 (1925), he maintains that the definition of malfeasance would require a showing of evil intent. We disagree.

The jury was required to find the existence of four elements in order to find Woodward guilty of malfeasance. First, the jury had to find that Woodward ordered the acts giving rise to the indictment. Second, the jury had to determine that he was the Hopkins County Judge Executive on the date the work order was issued. Third, the jury had to find that Woodward acted willfully, intentionally or in a manner that constituted gross negligence. Fourth, the jury had to determine that the act set forth in the first element constituted a wrongful or unjust act that was an abuse of power.

■ We reject Woodward's contention that the definition of malfeasance requires a showing of evil intent. The definition of malfeasance set forth in *Holliday supra*, relied on a 1925 dictionary. The use of the word "evil" is inappropriate. A more accurate definition of malfeasance can be found in *Webster's New Universal Unabridged Dictionary*, second edition (1983) which gives the following definition: "wrong-doing or misconduct, especially in handling public affairs; as, an official who takes graft or otherwise violates his trust is guilty of malfeasance." Evil intent is not a necessary element of the crime. The instructions issued by the trial court on the charge of malfeasance were appropriate.

Woodward next argues that the trial court erred by denying his motion for a directed verdict on the charge of reprisal against a public employee. He contends that the Commonwealth failed to offer any proof that he knew that the demoted employee had reported any alleged wrongdoing to anyone.

As was previously noted, on a motion for a directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Benham, supra*. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. Id. There was sufficient evidence to support the conviction.

The crime of reprisal against a public employee is codified in KRS 61.102. The statute provides:

No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention

. . .

an actual or suspected violation of any law, statute, executive order, administrative regulation, . . . or any facts or information relative to actual or suspected . . . abuse of authority.

■ Four elements must necessarily be met in order for this crime to have occurred. First, from the context of this chapter, the employer must be an officer of the state or one of its political subdivisions. Second, the employee must be a state employee or an employee of a political subdivision. Third, the employee must make a good faith report of a suspected violation of state or local statute or administrative regulation to an appropriate body or authority. Fourth, the defendant must be shown to act to punish the

employee for making this report or to act in such a manner so as to discourage the making of this report.

■ Here, the evidence was undisputed that Woodward was the county judge executive and that Ray was a county employee. It is also not contested that Ray made a good faith report to an appropriate body. The only disputed issue was whether Woodward's action of ordering Ray demoted was a reprisal for Ray's reports. Woodward claims that the Commonwealth failed to present any proof that he knew that Ray had reported any alleged wrongdoing to anyone. We disagree.

There was sufficient circumstantial evidence to support the criminal conviction because the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt. *See Bussell v. Commonwealth*, Ky., 882 S.W.2d 111, 114 (1994). The Commonwealth offered evidence that Ray had never been disciplined by the county and was considered by others to be a good employee. They also showed that Ray had reported the violations at issue to the appropriate officials and that shortly after doing so Woodward ordered Ray's supervisor to in turn order the employees to remain silent on the subject. Then, as the issue progressed and after the state police were notified, Woodward ordered Ray demoted and all the records from the county road department brought to his office. The Commonwealth presented sufficient evidence to convict Woodward of reprisal against a public employee.

■ Finally, Woodward argues that the trial court erred in its instructions to the jury on the offense of reprisal against a public employee. He claims that the instructions as given by the Court failed to make it clear to the jury that they were required to find that he knew that Ray had made accusations against him, and that this was the reason for Ray's demotion.

To find Woodward guilty of reprisal against a public employee the jury was instructed as follows:

A. That in Hopkins County on or about September 9, 1994, and within 12 months of the finding of the indictment the defendant was Hopkins County Judge Executive;

B. That Jimmy Ray, Jr., had in good faith reported facts or information relative to actual or suspected violations of state and/or local law or regulations to an appropriate body or authority to wit, the Hopkins County Attorney and members of the Hopkins County Fiscal Court;

C. That the defendant used his official authority as Hopkins County Judge Executive to demote and transfer Jimmy Ray, Jr.;

AND

D. That he acted willfully, as defined in Instruction No. 3, as a reprisal against Jimmy Ray, Jr. for reporting this information.

Instruction number 3 stated that a person acts willfully with respect to a result or to conduct when he acts intentionally, not accidentally or involuntarily, and done according to a purpose.

There was no error in the instructions given. The instructions included all of the elements as set forth in KRS 61.102.

The judgment of conviction is affirmed.

COOPER, JOHNSTONE, STEPHENS, WINTERSHEIMER, JJ., and Special Justice JOHN P. RALL, concur.

LAMBERT, C.J., dissents by separate opinion in which STUMBO, J., joins.

GRAVES, J., not sitting.

LAMBERT, Chief Justice, dissenting.

The majority has held that knowledge of Woodward's removal from office upon conviction could not be used to impeach a principal witness for the Commonwealth. Due to the potential for such evidence to reveal an improper motive for the witness, Woodward's political opponent, to testify against him, I believe exclusion of this evidence to have been prejudicial error.

Appellant was convicted of a misdemeanor. Ordinarily the only available penalty for a misdemeanor conviction is confinement in the

county jail for up to twelve months and a monetary fine. Upon this misdemeanor conviction, malfeasance in office, there is the additional sanction of removal from office. Removal from office upon conviction readily invites testimony against an accused that might be politically motivated. Thus, where there are consequences outside of the ordinary penalty structure, it would be only reasonable and fair to allow witnesses to be questioned for impeachment purposes regarding their knowledge of the extraordinary consequences. Such information is vital to the jury in assessment of credibility. *See Holt v. Commonwealth,* Ky., 259 S.W.2d 463, 465 (1953) (witness may be cross-examined regarding any facts showing bias or hostility towards the party against whom he is called); *Keller v. Commonwealth,* Ky., 572 S.W.2d 157, 159 (1978) (the jury is entitled to hear all the relevant facts that might have an influence on a witness' testimony so that the jury may "properly estimate the weight to be given the witness' testimony"); *Williams v. Commonwealth,* Ky., 569 S.W.2d 139, 145 (1978) ("the right to cross-examine a witness to impeach his credibility is fundamental to a fair trial").

With removal from office as a statutory consequence, the magnitude of improper motivation it could reveal is tremendous. In the case at bar, the credibility of witnesses testifying against Woodward could not be properly evaluated by the jury without an inquiry into their knowledge of the extraordinary sanction of removal from office.

STUMBO, J., joins this dissenting opinion.