Trudy P. **THORNTON**, Appellant,

v.

**OFFICE OF the FAYETTE COUNTY ATTORNEY, and Margaret Kannensohn as Fayette County Attorney, Appellees.**

No. 2008–CA–000740–MR.

Court of Appeals of Kentucky.

Aug. 14, 2009.

Michael Dean, Irvine, KY, George B. Cox, Lexington, KY, for appellant.

Larry S. Roberts, Fayette County Attorney, Lexington, KY, Richard E. Vimont, Assistant Fayette County Attorney, Lexington, KY, for appellee.

Before COMBS, Chief Judge; CLAYTON and NICKELL, Judges.

## OPINION

CLAYTON, Judge.

Trudy P. Thornton (Thornton) appeals from the Fayette Circuit Court's March 17, 2008, summary judgment dismissing her claims against the Fayette County Attorney's (FCA) Office. The trial court concluded, after reviewing the evidence in the light most favorable to Thornton, that she did not make a *prima facie* case of retaliation under the Kentucky Whistleblower Act, and that therefore, her claim failed as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

Thornton was a part-time, at-will support staff employee of the FCA Office who was assigned primarily to the cold check division. She was employed by the office of the FCA for approximately seven years over two separate time periods—August 1, 1994, though September 1997, and October 1, 2001, through January 31, 2005. The FCA's and Thornton's supervisor was Margaret Kannensohn.

Thornton's duties in her second stint with the FCA office were primarily to contact local merchants and explain FCA cold check collection services; serve subpoenas for the FCA juvenile division and other court proceedings; and transport witnesses to court. As such, Thornton's duties were performed almost entirely outside the FCA office.

In fall 2004, Thornton learned about Kannensohn's alleged misdeeds, which involved questionable billing and payments on work done in the FCA's child support division, from Wanda Brown, another employee and Kannensohn's chief administrative assistant. Apparently, Thornton had no personal knowledge about this conduct but learned about it from Brown. Thornton reported the second-hand information about the alleged misdeeds to State Representative Susan Westrom, the Governor's Office, the Attorney General's Office, and several other state agencies. Brown also provided information to public officials and filed a law suit separately. She is not a part of this action.

Thornton perceived that, after making these reports, Kannensohn began treating her differently. For instance, she had to turn in her work hours prior to receiving her paycheck whereas in the past she had submitted these hours after receiving her paycheck. During this same time period, late 2004 and early 2005, Kannensohn determined Thornton was not properly performing her duties and the position itself was no longer needed. Subsequently, Kannensohn discharged Thornton on January 31, 2005, and abolished the position. Before her discharge, Thornton had never been reprimanded for her job performance.

According to Thornton, this discharge was in direct contravention to the FCA Policy and Procedure Manual as she had never received a reprimand or any disciplinary action from the FCA's office. The manual discusses written reprimands and suspension for disciplinary measures **short of termination,** but it does not require written reprimands or suspension prior to termination. These procedures are merely listed as other possible disciplinary measures.

Following her discharge, Thornton brought an action for wrongful termination against Kannensohn, individually and as FCA, claiming that she had been discharged because she reported Kannensohn's conduct. Thornton asserts that her report of Kannensohn's "alleged" misdeeds to various federal and state agencies was protected under the Kentucky Whistleblower Statutes. In particular, Thornton maintains that her termination violated Kentucky Revised Statutes (KRS) 61.102 and KRS 61.103, which are part of these whistleblower statutes. She seeks punitive and compensatory damages, reinstatement to her position, back wages and benefits, attorney fees, costs, and other expenses. After Thornton filed the action, Kannensohn moved to dismiss the complaint against her individually. On June 8, 2005, the trial court sustained this motion.

## STANDARD OF REVIEW

Our standard of review from the entry of a summary judgment is well settled.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. Additionally, summary judgment is properly granted "where the movant shows that the adverse party cannot prevail under any circumstances." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 479–80 (Ky.1991)(citing *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255 (Ky.1985)). When considering a motion for summary judgment, the trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in [that party's] favor." *Id.* at 480. However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson,* 841 S.W.2d 169, 171 (Ky.1992). And as stated in *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996), the review is *de novo:*

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.... There is no requirement that the appellate court defer to the trial court since factual findings are not at issue.

Having ascertained the standard of review, we now proceed to an analysis of the law and facts of this particular case.

### ANALYSIS

We will now analyze the legal concepts regarding the granting of the motion for summary judgment in light of the relevant legal statutory and caselaw in order to determine whether the summary judgment was appropriate

#### 1. At–Will Employee

■ Thornton's status as an employee with the FCA office was akin to that of an at-will employee. Personnel appointed by the county attorney are subject to KRS 15.770(4), which allows employees' removal at the discretion of the County Attorney. In addition to the statutory provision, FCA Policy and Procedure Manual, Section 3.1, states that "all employees serve at the pleasure of the Fayette County Attorney." Thus, Thornton's employment in essence was terminable at-will, which means that an employer may ordinarily discharge an employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows,* 666 S.W.2d 730, 731 (Ky.1983); *Benningfield v. Pettit · Environmental, Inc.,* 183 S.W.3d 567 (Ky.App.2005).

Notwithstanding Thornton's at-will status, we must now ascertain the impact of KRS 61.102 and 61.103 on public employment in the Commonwealth of Kentucky in general and Thornton in particular.

#### 2. Kentucky Whistleblower Act

■ The Kentucky Whistleblower Act protects public employees who convey information about perceived misconduct to certain state entities, or to "any other appropriate body or authority." The act has a remedial purpose in protecting public employees who disclose wrongdoing in the government. It is codified at KRS 61.102(1) et seq., and states, in part:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which

tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

In sum, a public employer may not take any adverse action against an employee who makes known to appropriate governmental agencies any misconduct of that agency or its employees.

▮ In order to prevail in a whistleblower case and survive summary judgment, Thornton, under KRS 61.102, must establish four elements:

(1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making

such a disclosure or to punish the employee for making such a disclosure.

*Davidson v. Com., Dept. of Military Affairs*, 152 S.W.3d 247, 251 (Ky.App.2004), citing *Woodward v. Com.*, 984 S.W.2d 477, 480–81 (Ky.1998). Besides establishing these four elements, the employee must prove by a preponderance of evidence that "the disclosure was a contributing factor in the personnel action." *Davidson*, 152 S.W.3d at 251, citing KRS 61.103(1)(b) Once this burden is met, "[t]he burden of proof is then on the state employer 'to prove by clear and convincing evidence that the disclosure was not a material fact in the personnel action.'" *Id.*, citing KRS 61.103(3).

With regard to the first two elements, Thornton certainly can establish them. Clearly, the FCA office is a public employer and she was its employee. In addressing the third element—whether the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority—we initially note that the Fayette Circuit Court, when it granted the FCA's summary judgment motion, determined that Thornton did not meet the statutory "good faith" requirement, and having so found, did not address the fourth element. The court based its decision on its conclusion that if an employee makes a report and claims protection under the Whistleblower Act, the report must be based on personal knowledge—not hearsay—in order to meet the statutory requirement of good faith.

Besides Thornton's contention that the trial court erred in its interpretation of the good faith requirement, she also proposes that the trial court neglected to consider KRS 61.102(2), which provides:

No employer shall subject to reprisal or discriminate against, or use any offi-

cial authority or influence to cause reprisal or discrimination by others against, any person who supports, aids, or substantiates any employee who makes public any wrongdoing set forth in subsection (1) of this section.

Whereas the FCA, besides concurring with the circuit court that Thornton's report was not made in good faith, also argues that, even though KRS 61.102 is silent as to whether the employer's lack of actual knowledge of a reported violation provides an exception to the statute, Thornton must still prove that Kannensohn was aware of Thornton's report before discharging her to sustain a whistle-blowing claim.

So, we are faced with two legal questions. Did Thornton make a "good faith" report under KRS 61.102, considering that her report of alleged wrongdoing was based on hearsay evidence? Second, in order to prevail under the whistleblower statute must Thornton prove that Kannensohn knew about Thornton's report prior to terminating her? Further, we will consider whether, as Thornton claims and the FCA disputes, KRS 61.102(2) is implicated here and protects Thornton, as she opines that she was basically supporting, aiding, or substantiating another employee's reports.

### 3. Good faith report

■ Kentucky has no specific caselaw addressing the issue of whether making a report based on hearsay obviates the "good faith" reporting requirement of the statute. Certainly, the Act protects from retaliation an employee, who in good faith, reports or causes to be reported any activity that the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States.

"Forty-seven of the fifty states currently offer general whistleblower protection to employees. However, the statutory requirements that employees must meet in order to receive protection vary widely by state." *See* 96 Cal. L.Rev. 1633, 1641 (2008). One major area of difference among the states is whether the employee's report must be accurate. *Id.* For instance in Texas, the whistleblower statute is based on the precept that a reasonable belief of a violation is sufficient for protection under the Whistleblower Act. Therefore, caselaw in Texas has allowed protection under the Whistleblower Act, even though the public employee's report of alleged violations was based on hearsay, rumors, and innuendo. This protection was given when no evidence existed as to whatever the employee believed that the facts were false or did not constitute violation of the law. *Castaneda v. Texas Dept. of Agriculture*, 831 S.W.2d 501 (Tex.App.-Corpus Christi, 1992). Therein, the court answered the employer's contention that, because the employee disclosed only rumors and innuendo and had no personal knowledge of the alleged legal violations, the employee should not be protected by the whistleblower statute in the following manner. Although the basis of the employee's knowledge was hearsay, there was no evidence that he had not acted in "good faith" because he believed the facts were false or that they did not constitute a legal violation. *Id.* at 504.

■ It is interesting to us that the Texas decision made a distinction between the use of "hearsay" and "good faith." We, too, believe that an employee may in good faith make a report based on hearsay. The statute itself states:

No employer shall subject to reprisal ... any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of ... any facts

or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

KRS 61.102(1).

■ Therefore, "any facts" that are related to "actual or suspected mismanagement" are allowed to be part of a whistleblower report. The word "suspected" implies a liberal orientation toward the content of the disclosure. Indeed, many state employees making such reports are not only unaware of the actual provisions of the whistleblower statutes but are also not attorneys and thus not versed in legal terminology like "hearsay." But, establishing that an employee reported suspected violations of law with second-hand information does not end the inquiry. The critical question remains as to whether the report was made in good faith.

■ To show that good faith was used in making a report, it is incumbent upon the employee to demonstrate that the report was based on a reasonable belief of accuracy. Further, considering the public policy purposes of the whistleblower statute, the employer must manifest some desire to correct the wrongful activity reported. Surely, it is not good faith to make a report, particularly one based on second-hand knowledge, for a corrupt motive like malice, spite, or personal gain.

■ In order to determine whether a report of a violation or suspected violation of law is made in good faith, we must look not only at the content of the report,

but also at the reporter's activities in making the report. Here, Thornton's activities are problematic in terms of good faith. She was a part-time employee who worked almost completely outside the office. Thornton made no attempt to corroborate or discover firsthand information about the suspected activities. Thornton had no personal basis for making the allegations and knew that they were being reported by Wanda Brown. Moreover, while we have determined that the use of hearsay alone does not mean a report was not made in good faith, the use of hearsay evidence alone may certainly be a factor in determining if a report was made in good faith.

■ We believe, based on the public policy behind whistleblower statutes, to enhance the legality of state government and protect employees who make reports of wrongdoing, that it is impractical to add technical legal terms—like hearsay—to limit employees' good faith reports. Notwithstanding this limitation, undoubtedly, the Kentucky Whistleblower statutory scheme does not protect an employee who unjustifiably complains to management or the authorities about non-existent employer misconduct.

Based on the fact that Thornton's employment duties required her to be out of the office, her statements were not based on actual knowledge of the alleged misconduct. Her eagerness to report misconduct based on no actual knowledge, when it was being reported by someone else, belies the "good faith" of her report. We concur with the circuit court that her report was not made in good faith.

4. Kannensohn's knowledge of the report

■ Even though it would not be necessary for us to consider the fourth element required to establish status as a whistleblower since we have determined

the report was not made in good faith, in the interest of thoroughness we will do so. The fourth element that Thornton must establish is that Kannensohn as the FCA retaliated against her. Nothing on the record shows that Kannensohn or anyone else at the FCA knew that Thornton (or her colleague) had reported the alleged misconduct to public officials. Thornton's burden in alleging a violation of the Whistleblower Act must be to show by a preponderance of evidence that [her] disclosure of a suspected violation of the law was a contributing factor in the personnel action against her. KRS 61.102, *Davidson*, 152 S.W.3d 247.

Yet, Thornton admitted in her deposition that she had no knowledge that anyone, including Kannensohn, at the FCA office knew that she had made these reports prior to her termination. Furthermore, Kannensohn also testified, under oath, that she had no knowledge of Thornton's reports to public officials prior to dismissing her. To avoid summary judgment, Thornton has to provide specific facts that call into question Kannensohn's alleged motive for her termination. Thornton has not provided any such facts—only innuendo and circumstantial suggestions. Such indirect contentions do not overcome Thornton's burden even when the evidence is viewed in the light most favorable to her.

5. Thornton's action protected by KRS 61.102(2)

Finally, we will consider Thornton's claim, which the FCA disputes, that KRS 61.102(2) is implicated here. KRS 61.102(2) provides that no employer shall retaliate against a person "who supports, aids, or substantiates any employee who makes public any wrongdoing...." Thornton contends that she was basically supporting, aiding, or substantiating another employee's reports, and therefore, her ac-

tion was protected. A review of the plain meaning of the statute, however, suggests that Thornton did not support or aid Brown but made her own reports and filed her action separately. As far as substantiating Brown's charges against Kannensohn, Thornton, in her deposition, acknowledged that she had no personal knowledge or information about these allegations. Thus, we conclude that Thornton's actions do not support, aid or substantiate Brown's actions as contemplated under KRS 61.102(2).

## CONCLUSION

For the forgoing reasons, we affirm the Fayette Circuit Court's order of March 17, 2008, granting the FCA's motion for summary judgment.

**ALL CONCUR.**