**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0130n.06

Case No. 19-5475

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WENDY HARPER, | ) | **FILED** |
| | ) | Mar 04, 2020 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| TERRY ELDER, BRAD CONAWAY, and | ) | KENTUCKY |
| WEBSTER COUNTY, KENTUCKY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

COOK, Circuit Judge. Jail employee Wendy Harper alleges that her co-worker Brad Conaway repeatedly harassed her because of her gender, and that their boss, the county Jailer, not only ignored her complaints but also retaliated against her for reporting Conaway's misconduct. The district court granted summary judgment to the defendants on Harper's state and federal claims against Conaway, the Jailer, and the county. Because we differ with the district court as to whether Harper's evidence on the pervasiveness of Conaway's harassment sets up a genuine issue of material fact, we REVERSE in part and AFFIRM in part the grant of summary judgment.

**I.**

Harper worked as a Deputy Jailer at Kentucky's Webster County Jail. Defendant Terry Elder, the Webster County Jailer, warned her before her first day on the job, "[D]on't let the guys

run you off on this shift." One of Harper's co-workers then told her that fellow deputy Conaway demeaned women and that two female employees switched shifts to avoid him.

According to Harper, Conaway came on to her "immediately." He asked about her romantic availability, complimented her physical appearance, and made overt sexual advances. She reported Conaway's conduct to Elder, but he took no corrective action.

After Harper spurned Conaway's overtures his "behavior changed from flirtation to aggression." Harper contends that Conaway frequently yelled at her in front of other deputies and ordered her around even when she held his same rank. And Conaway regularly directed such behavior at female—but not male—deputies.

Some time into her tenure, following a "loud" and "heated" confrontation between her and Conaway, Harper claims that Conaway intentionally drove his pickup truck in her direction as they left work, coming "within inches of hitting [her]." Conaway disputes this account; so does a witness.

Eventually, the jail promoted Conaway to sergeant. With that new rank, Conaway routinely selected Harper over her male colleagues for menial tasks.

The resulting stress caused Harper to suffer migraines and nausea that worsened over time prompting Harper's therapist to diagnose anxiety and adjustment disorder with depressed mood. On doctor's orders, Harper requested FMLA leave and the County granted it.

During her leave, Harper asked Jailer Elder to assign Conaway to the other day shift so they would not overlap. Elder instead recommended that Harper switch to the night shift. She rejected that option, viewing it as a demotion—though financially equivalent—and non-curative as she would still intersect with him at shift changes.

With Conaway's ongoing harassment and Elder's failure to remedy it, Harper left the job when her medical leave expired, deeming herself constructively discharged as she was "unable to return."

Harper sued Elder, Conaway, and the County for hostile work environment, retaliation, and whistleblower violations. The district court granted summary judgment to Defendants, holding that Harper failed to establish (1) "severe or pervasive" harassment to support her hostile work environment claims, (2) an adverse employment action supporting her retaliation claim, and (3) any action taken to punish her for reporting misconduct, an essential element of her whistleblower claim. Harper appeals.

## II.

Because the district court granted summary judgment to Defendants, we review its decision de novo. *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017) (en banc). We will affirm if "there is no genuine dispute as to any material fact and [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw all reasonable inferences in Harper's favor, *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 311 (6th Cir. 2019), but if she "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," summary judgment holds, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.

### A. Hostile Work Environment and Retaliation

Harper survives summary judgment if she shows that the harassment was severe or pervasive. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (hostile work environment); *Kentucky Dep't of Corr. v. Furr*, Nos. 2004-CA-000526-MR, 2004-CA-000668-

MR, 2006 WL 2032947, at *4 (Ky. Ct. App. July 21, 2006) (retaliation). When assessing the totality of Harper's proffered evidence, district courts should look to the harassment's frequency, severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with work performance. *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993); *see also Becker v. Saber Mgmt.-Kentucky, LLC*, No. 2009-CA-000089-MR, 2009 WL 4060859, at *3–4 (Ky. Ct. App. Nov. 25, 2009).

For starters, Harper testified that she "was scared of Conaway" (he stood 6'6") and that she viewed Conaway's actions as laden with "hostility and harassment." She described conduct that, taken together, could make a reasonable person in Harper's position feel that her workplace is hostile: (1) Conaway chastised her for arguing with a co-worker; (2) he "yell[ed]" at Harper for refusing to follow his orders though at the time the two of them ranked the same; (3) another time, Conaway tried "to force" her to distribute inmate medication despite being unlicensed to do so; (4) she and Conaway had a "very, very heated" argument after Conaway overrode her orders; (5) afterward Conaway sped his pickup truck toward her; (6) he "yell[ed] at" Harper for incorrectly performing an inmate headcount when she had followed procedure; and (7) Conaway later "screamed" at Harper to "mind [her] own business" after she reported inappropriate conduct between a deputy and an inmate. Harper claims the harassment "was an every day thing." When pressed, she confirmed, "it was a daily thing." These examples illustrate a years-long "succession of harassing acts." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 638 (2007).

As for her claim against Elder, Harper's deposition confirms that she reported Conaway's conduct "very often"—"several times a month, at least," to no avail. Harper's *Monell* claim against the County is supported on the same basis.

And as for the requirement that the harassment "unreasonably interfere" with Harper's work performance, *Harris*, 510 U.S. at 23, her migraines and nausea eventually escalated "to the point where [she] was having trouble functioning," prompting her doctor to prescribe medical leave.

To be sure, Conaway, Elder, the County, and their witnesses dispute much of Harper's testimony. But courts neither assess witness credibility nor weigh evidence at the summary judgment stage. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). Drawing all reasonable inferences in Harper's favor, *Babb*, 942 F.3d at 311, we must reverse the district court's grant of summary judgment to Defendants on Harper's hostile work environment and retaliation claims.

### B. Whistleblower

The district court also granted summary judgment to the County on Harper's claim under the Kentucky Whistleblower Act. Its conclusion is sound.

The KWA protects "employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information." *Harper v. Univ. of Louisville*, 559 S.W.3d 796, 801 (Ky. 2018) (quoting *Davidson v. Com., Dep't of Military Affairs*, 152 S.W.3d 247, 255 (Ky. App. 2004)); Ky. Rev. Stat. Ann. § 61.102. To prevail on a whistleblower claim, a plaintiff must establish four elements: (1) that her employer "is an officer of the state," (2) that she "is employed by the state," (3) that she disclosed "a suspected violation of state or local law to an appropriate body or authority," and (4) that the employer "took action or threatened to take action to discourage [her] from making such a disclosure or to punish [her] for making such a disclosure." *Moss v. Kentucky State Univ.*, 465 S.W.3d 457, 459 (Ky. Ct. App. 2014).

In dismissing Harper's KWA cause of action, the court held that she failed to establish the fourth element of her claim: action or threatened action to discourage or punish her for reporting malfeasance. Kentucky courts require that the plaintiff shows that her whistleblowing "was a contributing factor in the . . . action against her," *Thornton v. Office of Fayette Cty. Attorney*, 292 S.W.3d 324, 332 (Ky. Ct. App. 2009).

Harper grounds her KWA claim on reports she made to Conaway that Deputy Jimmy Hernandez spent too much time with female inmates, perhaps (according to Harper) in violation of jail policy and Kentucky law. Following one of Harper's reports, Conaway screamed at her, "[M]ind your own business, stay out of it, and if you don't drop it, all hell's going to break loose." When Harper described Conaway's affront to Elder, Elder told Conaway to "fix" the Hernandez problem, but he disregarded Harper's complaint about Conaway's treatment of her.

Harper maintains that in telling Conaway about Hernandez's misconduct, she disclosed "a suspected violation of state or local law." And she alleges that Elder and Conaway punished her for doing so with (1) Conaway berating her for reporting Hernandez, (2) Elder refusing to correct Conaway's conduct, and (3) Elder "attempt[ing] to force Harper to [the night] shift."

Regarding Conaway's angry response and Elder's refusal to prevent it, Harper fails to connect this conduct to her whistleblowing. As Harper testified, Conaway yelled at her "every day." And Elder allowed it for years. That these events repeated themselves following the whistleblowing does not establish a causal connection between Harper's reporting and Defendants' conduct. *See Judd v. Univ. of Kentucky*, No. 2018-CA-000652-MR, 2019 WL 3851631, at *3–4 (Ky. Ct. App. Aug. 16, 2019).

Elder's suggestion that Harper switch shifts, even if causally related to her whistleblowing, cannot constitute a materially adverse action because a shift change is not materially adverse

without some reduction in pay, prestige, or responsibility. *Amann v. Potter*, 105 F. App'x 802, 807–08 (6th Cir. 2004); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886–87 (6th Cir. 1996); *Jones v. Oldham Cty. Sheriff's Dep't*, No. 2009-CA-000350-MR, 2010 WL 1508150, at \*11 (Ky. Ct. App. Apr. 16, 2010). Yet Harper admits that the night shift work and pay were the same as on the day shift. She protests that shift changes suffice as adverse if they interfere with childcare— relying on *Nolen v. Ohio Dep't of Rehab. & Corr.*, where the plaintiff's disabled son required around-the-clock care which the plaintiff could not provide if moved to the night shift. No. 3:17-cv-182, 2018 WL 6725395, at \*1–2, \*5–6 (N.D. Ohio Dec. 21, 2018). Much different than *Nolen*, Harper complained only that she "didn't want to have to miss[ her son's] ball games and be[ing] at home for him [in the] evening." These facts cannot support a whistleblowing claim.

## IV.

We REVERSE the grant of summary judgment to Defendants on Harper's hostile work environment and retaliation claims and REMAND for proceedings consistent with this opinion. We AFFIRM summary judgment for the County on her whistleblower claim.