RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1109-MR

RON ANTHONY                                                          APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE JULIE KAELIN, JUDGE
                    ACTION NO. 22-CI-002466


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT D/B/A
LOUISVILLE METRO DEPARTMENT
OF CORRECTIONS                                                        APPELLEE


                              OPINION
                             AFFIRMING

                           ** ** ** ** **

BEFORE:  CETRULO, McNEILL, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  This is an appeal from a summary judgment in favor of

Louisville Metro Department of Corrections ("LMDC") in a claimed

whistleblower action by a former employee, Ron Anthony ("Anthony").  The

Jefferson Circuit Court found that Anthony was not terminated for a good faith

whistleblower report, but rather for admitted sexual activity with a fellow employee while on duty in the jail and for sexually harassing three female officers under his supervision. The Jefferson Circuit Court granted judgment in favor of LMDC and, upon our review, we affirm.

## FACTUAL BACKGROUND

Anthony began employment with LMDC in 2005 and worked in various positions until his termination in 2020. In 2019, he was promoted to Sergeant. In that role, he contends that he became aware of one employee in particular, Ebony Johnson ("Johnson"), who was not following his mitigation protocols against contraband entering the jail. In May 2019, upon his recommendation, Johnson was removed from a field training officer program. Anthony claims that she then retaliated and falsely claimed he sexually assaulted her. He maintains she recruited other female officers to claim he sexually assaulted or harassed them as well. He became aware of these complaints by at least early September 2019. The record reflects that a Professional Standards Unit ("PSU") investigation was initiated in October 2019 after three complaints were made by female employees, including Johnson. A fourth employee, Krystle Brandon ("Brandon"), resigned and then filed an additional complaint against Anthony. During the PSU investigation, Anthony denied sexually assaulting any of the employees, but volunteered that he engaged in consensual sex with Johnson

in the control room of the jail and that this encounter occurred three years prior to her termination. He also revealed he received information in March 2019 that Johnson engaged in illegal sexual relationships with inmates. Anthony first revealed this information in an undated and unsigned letter first given to his superior in October 2019.[1] On April 1, 2020, following a several month PSU investigation, Anthony was given a disciplinary notice stating reasons for his recommended termination, as follows:

> Sergeant Anthony[,] based on the information gathered through interviews and reports a finding of sustained has been returned on you from an internal investigation.

> You were accused of a sexual assault that took place in a control room inside the Jail although there was no evidence to support that allegation, you admitted to having sexual intercourse in the control room and stated it was mutual. As a Corrections employee, you should have known sexual intercourse inside the security perimeter of the jail is never acceptable. This behavior could result in discipline including termination.

> Three female Corrections Officers gave sworn statements to the Professional Standards Unit that you engaged in inappropriate behavior such as unwanted touching and kissing. According to two female Corrections Officers, you exposed your penis during these encounters. This behavior could result in discipline including termination.

---

[1] The evidence revealed that Anthony printed several anonymous copies of a letter and was overheard discussing this information at the reception desk and with other officers. His supervisor overheard the conversation and obtained a copy of the letter.

You admittedly drafted a letter, distributing it to shift command and other staff, about a violation of department policy and regulations concerning a female officer's alleged inappropriate behavior with an inmate. It was not until you were aware of the complaint against you, did you come forward with this information. This act is considered retaliation. This behavior could result in discipline including termination.

Sergeant Anthony, all the violations sustained against you warrant discipline and termination. Your behavior was offensive, harassing and retaliatory which shall not be tolerated by any member of Metro Corrections.

Additional interviews were conducted, followed by a hearing, and on May 19, 2020, Anthony's LMDC employment was terminated. The termination was followed by a four-step grievance process provided through the collective bargaining agreement ("CBA") between Louisville Metro and Anthony's union. The termination was then upheld by an independent arbitrator. The evidence developed through that investigation included numerous text messages from Anthony to subordinates that were sexually charged, and at the very least inappropriate harassment, which Anthony did not deny.

Anthony then filed this action with the Jefferson Circuit Court, alleging that his termination was in violation of Kentucky's Whistleblower

Protection Act ("KWA") codified in KRS[2] 61.102.[3] Specifically, Anthony asserted that he was terminated because of his letter outlining the conduct of Johnson.

After litigating for over three years, LMDC and Anthony filed opposing motions for summary judgment on the KWA claim in July 2025. On August 28, 2025, the circuit court granted the motion in favor of LMDC. Anthony appealed.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is therefore entitled to judgment as a matter of law. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370 (Ky. 2010) (citation omitted). Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991). "Whether summary judgment is appropriate is a legal question involving no factual findings, so a trial court's grant of summary judgment is reviewed *de novo*." *Moss v. Kentucky State*

---

[2] Kentucky Revised Statute.

[3] Anthony initially filed a complaint that asserted claims of discrimination in violation of the Kentucky Civil Rights Act and breach of contract under the CBA. An amended complaint added the KWA claim. The circuit court granted summary judgment as to all claims, but only the KWA dismissal is being appealed.

*Univ.*, 465 S.W.3d 457, 459 (Ky. App. 2014) (citing *Coomer*, 319 S.W.3d at 370-71).

## ANALYSIS

The KWA, codified in KRS 61.102, prohibits an employer from discouraging, threatening, interfering with, or retaliating against an employee who in good faith reports facts or information relative to a violation of law or statute.

> In order to demonstrate a violation of KRS 61.102, an employee must establish the following four elements: (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure.

*Davidson v. Commonwealth of Kentucky, Dep't of Mil. Affs.*, 152 S.W.3d 247, 251 (Ky. App. 2004) (citing *Woodward v. Commonwealth*, 984 S.W.2d 477, 480-81 (Ky. 1998)). Only the third and fourth prongs are at issue in this appeal. In addition to establishing these four elements, the employee must prove "by a preponderance of evidence that the disclosure was a contributing factor in the personnel action." *Id.* at 251 (quoting KRS 61.103(3)).[4]

---

[4] *See also* KRS 61.103(1)(b) (defining "contributing factor").

Anthony asserts on appeal that he reported Johnson's illegal conduct and that his letter was a "contributory factor" to the termination of his employment. However, the circuit court concluded that Anthony failed to establish the necessary requirement of making a "good faith" report. *See* KRS 61.102(1). Further, the complaint must allege a "qualifying" disclosure of an actual or suspected violation of the law or other misconduct specified in KRS 61.102(1) to state a whistleblowing claim. *See Harper v. Univ. of Louisville*, 559 S.W.3d 796, 801-02 (Ky. 2018) (discussing how the KWA is construed similarly to its federal counterpart). Here, the circuit court held that the letter, to the extent it even qualifies as a report of violations, was part of Anthony's job responsibilities, and therefore, was not "qualified" under the KWA. Finally, the circuit court found that the letter did not contribute to his termination.

First, the circuit court held that the letter was not a good faith report as it was not revealed until months after Anthony admitted he had been told that Johnson had been having sexual encounters with inmates. The court noted that Anthony did not report this information when he received it, and as Johnson's supervisor, he was obligated to do so.[5] Instead, he revealed that information several months later, in an undated and unsigned letter that he publicly shared

---

[5] Pursuant to the Prison Rape Elimination Act ("PREA"), 34 United States Code ("U.S.C.") Chapter 303, corrections staff have an immediate obligation to report sexual abuse, even if it is hearsay or anonymous.

outside of the proper channels for reporting this behavior. The circuit court thus found the letter was not prepared in good faith, but instead made in retaliation and based only on selfish considerations.

In so ruling, the court looked to this Court's opinion in *Thornton v. Office of Fayette County Attorney*, 292 S.W.3d 324 (Ky. App. 2009). In *Thornton*, a former employee of the county attorney's office claimed she was terminated for reporting her supervisor's alleged misconduct. *Id.* at 327. The trial court disagreed and granted summary judgment to the employer. *Id.* An appeal to this Court focused on the issue of whether the report was made in good faith. *Id.* at 329-30. We held that "[t]o show that good faith was used in making a report, it is incumbent upon the employee to demonstrate that the report was based on a reasonable belief of accuracy." *Id.* at 331. This Court also observed the public policy behind the KWA embodies an inherent good-faith motive "to correct the wrongful activity reported." *Id.* ("Surely, it is not good faith to make a report, particularly one based on second-hand knowledge, for a corrupt motive like malice, spite, or personal gain.").

Here, the circuit court found there was no proof that this letter was a good faith report. The court noted that Anthony admittedly learned of Johnson's infractions and "sat on that information" for months before submitting a report he was required to file immediately upon receiving such information. Anthony then

not only used the letter to disclose Johnson's infractions but also to reveal other salacious information about her and another employee who likewise made accusations against him. The information was not provided on the form or in the proper format for a report of illegal sexual relations with an inmate. Further, it was not provided confidentially to the appropriate individual. In short, we agree with the circuit court that this letter certainly suggests ill will and retaliation against his accuser.

Anthony argues that the fact he may have harbored ill will or spite towards Johnson does not remove him from the protection of the KWA. However, our Supreme Court has clarified that complaints to a supervisor regarding the supervisor's own misconduct are not disclosures protected by the KWA. *See Pennyrile Allied Cmty. Servs., Inc. v. Rogers*, 459 S.W.3d 339, 346 (Ky. 2015). Somewhat analogous, Anthony's complaint, which only came about in response to Johnson's complaint, was not intended as a qualified disclosure protected by the KWA. In *Pennyrile*, the Court explained that the KWA does not apply where "the gravamen of the complaint was not *intended* as a report of information regarding alleged violations of law[.]" 459 S.W.3d at 345 (citing *Boykins v. Hous. Auth. of Louisville*, 842 S.W.2d 527, 528 (Ky. 1992)). We agree with the circuit court that Anthony's letter was not made in good faith and not intended as a qualified report

of information regarding Johnson's violations of law, but rather to retaliate against her and the three other officers who filed complaints against him.

In *Pennyrile*, our Supreme Court explained that "[t]he phrases 'in good faith' and 'brings to the attention of' clearly denote[ ] an intent on the part of the employee to reveal or impart what is known to the employee to someone else who lacks that knowledge and . . . is in a position to do something about it." 459 S.W.3d at 345. Here, the circumstances of Anthony's letter and the manner in which he presented allegations against those who had filed complaints against him, resonates of the personal grievance discussed in *Pennyrile*. *Id*. *See also Kearney v. Univ. of Kentucky*, 638 S.W.3d 385, 399 (Ky. 2022) (discussing the nature of the information discussed and whether it was made to the appropriate authority). As the trial court here stated:

> Whistleblower laws are established to protect employees who go above and beyond the call of duty and report infractions of law that are hidden. [*Huffman v. Off. of Pers. Mgmt.*, 263 F.3d 1341, 1353 (Fed. Cir. 2001)]. Anthony is no such person. Anthony is not entitled to whistleblower protection because reporting PREA violations was his duty as a Sergeant and a supervisor.

Even though it may be unnecessary for us to consider the remaining element required to establish one's status as a whistleblower, since we have determined Anthony's letter was not made in good faith, we will do so to fully

-10-

respond to his further arguments on appeal. Anthony asserted that LMDC terminated his employment *because* of his letter.

Even if Anthony's letter qualified as a protected disclosure, he did not prove that it was a contributing factor in his termination. Any covered disclosure must be shown by a preponderance of the evidence to be a contributing factor in the personnel action. KRS 61.103(3). KRS 61.103(1)(b) defines "contributing factor" as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of a decision." KRS 61.103(1)(b) further provides that "[i]t shall be presumed there existed a 'contributing factor' if the official taking the action knew or had constructive knowledge of the disclosure and acted within a limited period of time so that a reasonable person would conclude the disclosure was a factor in the personnel action."

One of the complainants against Anthony resigned and then filed a formal complaint in October 2019. Three other employees also filed complaints, and a PSU investigation was promptly commenced. That investigation was already ongoing when the unsigned and undated letter was circulated or shared by Anthony, and his discussion of facts contained therein was overhead by the PREA Investigator. The letter outlines graphic details or "facts" about Johnson being sexually involved with former inmates. From other dates included in the letter it was apparent this was prepared after the investigation into complaints against

-11-

Anthony had commenced. The manner in which this information was released violated policy, and Anthony admitted to having knowledge of Johnson's involvement with at least one inmate since March 2019. However, he did not report that information to anyone prior to this letter being shared.

It was the investigation into complaints against Anthony that resulted in the evidence that Anthony disclosed himself, admitting to having sexual intercourse with Johnson while on the job and in the facility. During the investigation, Anthony further admitted to hugging and kissing another employee who had filed a complaint against him, and it was undisputed that he was sending graphic, sexual, and frequent harassing text messages to that employee. The evidence included texts with that employee's boyfriend threatening Anthony with a sexual harassment claim and Anthony's texts in response to the boyfriend threatening him. Finally, the evidence certainly supports the conclusion that his letter was in retaliation for those complaints against him, rather than for a good faith reason to expose illegal conduct.

We conclude that Anthony has not met his burden to survive summary judgment. Both parties moved for summary judgment after three years of litigation. While Anthony disputed some of the sexual harassment allegations against him, he admitted to having sexual intercourse with another employee while on duty in the secured perimeter of the jail and sending harassing communications

of a sexual nature to subordinates. Even when viewed in a light most favorable to him, the uncontroverted evidence proved just cause for his termination and fell far outside of whistleblower protection. Simply put, Anthony failed to establish a genuine issue of material fact that his disclosure of Johnson's actions during the investigation was a contributing factor in his termination.

## CONCLUSION

Therefore, summary judgment was appropriate on this claim, and we AFFIRM the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Joshua T. Rose
Louisville, Kentucky

BRIEF FOR APPELLEE:

Mitchel Denham
Trenton D. Adkins
Louisville, Kentucky