**PENNYRILE ALLIED COMMUNITY SERVICES, INC., Appellant**

v.

**Katricia ROGERS, Appellee**

**2013–SC–000012–DG**

Supreme Court of Kentucky.

RENDERED: FEBRUARY 19, 2015

Modified: March 3, 2015

Rehearing Denied May 14, 2015

COUNSEL FOR APPELLANT: Robert Dmitri Bobrow, David Eugene Crittenden, Boehl, Stopher & Graves, LLP, Louisville

COUNSEL FOR APPELLEE: Anthony James Bucher, B. Dahlenburg Bonar, P.S.C., Covington

OPINION OF THE COURT BY JUSTICE VENTERS

KRS 61.102, commonly known as the Kentucky "whistleblower" statute, prohibits reprisal against a public employee "who in good faith reports, discloses, divulges ... any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority or otherwise brings to the attention of ... [an] appropriate body or authority, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety." Pursuant to KRS 61.101, the whistleblower protections and remedies apply to employees of state government and any of its political subdivisions.[1] The purpose un-

---

1. KRS 61.101: "As used in KRS 61.102 and 61.103, unless the context requires otherwise: (1) 'Employee' means a person in the service of the Commonwealth of Kentucky, or any of its political subdivisions...."

We held in *Wilson v. City of Cent. City,* 372 S.W.3d 863 (Ky.2012), that for purposes of KRS 61.102, cities and other municipal corporations are not "political subdivisions" of the Commonwealth, and therefore are not

derlying the statute is "to discourage wrongdoing in government, and protect those who make [such wrongdoing] public." *Workforce Dev. Cabinet v. Gaines,* 276 S.W.3d 789, 792 (Ky.2008).

This case presents two issues: 1) must a government employee's report or disclosure touch on a matter of public concern in order to come within the protections of the statute; and 2) whether Appellee's conduct qualifies as a disclosure within the meaning of the statute?

For the reasons stated below, and based upon the plain language of the statute, we conclude that KRS 61.102 does not require an employee's report or disclosure to touch on a matter of public concern. We further hold that none of the reports and disclosures presented by the facts here fit within the protections afforded by the statute.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Appellee, Katricia Rogers (Rogers), was an at-will employee of Appellant, Pennyrile Allied Community Services, Inc. (PACS). PACS is a government program focused on rural development. Rogers was responsible for presenting educational programs at schools. Because of the nature of her work, Rogers traveled around the state and was often working out of the office.

Rogers worked under the supervision of Dennis Gibbs (Gibbs), a Regional Supervisor. Gibbs frequently traveled to the homes of his subordinates to ensure that they were actually working rather than spending the day at home. In September of 2001, Gibbs went to check on Rogers. He drove up Rogers's driveway, which was marked "private property," and caused minor damage to the gravel driveway when his vehicle got stuck. Later that day, Gibbs informed Rogers of the incident. She made no complaint about Gibbs's conduct at this time.

Later, however, Rogers went to the local sheriffs office and asked a deputy if Gibbs's practice of making uninvited visits to employees' homes was legal. The deputy opined that no one, "employer or not," could come on private property without permission, and that doing so would constitute trespassing. Rogers took no immediate action in response to that information.

About two months later, at a PACS staff meeting that included Gibbs and other PACS employees, Rogers challenged Gibbs about his unannounced visits to employees' homes during work hours. She began by asking Gibbs what he was authorized to do with regard to checking on his employees to ensure they were actually working. Gibbs responded, somewhat defiantly, that he could do whatever he wanted, including going to the workers' homes and looking into their windows.

Rogers then mentioned the opinion given to her at the sheriff's office and implied that she would seek prosecution of Gibbs if he trespassed upon her property again. The meeting ended abruptly. The next morning, Rogers was fired for insubordination and other reasons.[2] PACS admits that the decision to terminate Rogers was made after Rogers's remarks at the staff meeting.

Rogers then filed suit under KRS 61.102, claiming that she had been terminated from her job for making "a good faith report to local law enforcement officers and representatives of PACS ... regarding an actual or suspected violation of

"employers" within the meaning of the Whistleblower Act.

2. Rogers had previously been on probation with PACS for reasons that are not germane to this appeal.

the law." The trial court granted summary judgment to PACS, dismissing Rogers's whistleblower claim on the ground that Rogers's report or disclosure of Gibbs's alleged trespass did not touch on a matter of public concern. The trial court reasoned that Rogers's statements to the deputy at the sheriff's office and to Gibbs at the staff meeting were nothing more than the expression of a personal grievance that did not disclose illegality, fraud, waste, or abuse of authority in state government, or violations of the law.

On direct appeal, the Court of Appeals reversed the trial court, holding that the unambiguous language of KRS 61.102 contained no requirement that reports under the act must touch upon a matter of public concern, and that it was therefore beyond the authority of the courts to interject such a requirement. We granted discretionary review to consider the important questions presented by this matter.

## II. ANALYSIS

On discretionary review before this Court, PACS acknowledges that KRS 61.102 contains no explicit language requiring that disclosures and reports protected by the statute must "touch on a matter of public concern." But as grounds for reversing the Court of Appeals opinion, PACS argues that the legislative intent behind the statute clearly contemplates such a requirement. As an alternate ground for reversal, PACS argues that Rogers never made the kind of report or disclosure covered by the statute. PACS contends that neither her conversation with the deputy sheriff about Gibbs's behavior, nor her confrontation of Gibbs at the PACS meeting was subject to KRS 61.102.

██ This case is purely a matter of statutory construction and interpretation, which is a question of law. Accordingly,

this Court's review is *de novo*. *Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mut. Ins. Co.*, 250 S.W.3d 321, 325 (Ky. 2008). KRS 61.102 provides:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the Executive Branch Ethics Commission, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence.

This statute represents the General Assembly's enactment, based upon public policy considerations, of an exception to the common law principle that an at-will employee may be fired for any reason at any time. As noted previously, KRS 61.101 defines the public employees and employ-

ers covered by the act. PACS's status as a "political subdivision" of state government and Rogers's status as an employee of that entity have not been challenged in this action. There is no dispute that Rogers was fired, although the motivation for her dismissal was a disputed issue of fact, which was not addressed because the trial court's interpretation of the statute resolved the case as a matter of law.

## A. KRS 61.102 and the "Matter of Public Concern" Requirement

We have not directly addressed the question of whether a valid claim under KRS 61.102 must arise from a report or disclosure touching upon a matter of public concern. Our review of a statute to determine its meaning begins with the elementary standards of statutory construction.

KRS 446.080(1) requires that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(4) provides: "All words and phrases shall be construed according to the common and approved usage of language[.]"

■ Where a statute is plain and unambiguous on its face, we are not at liberty to construe the language otherwise, even though such a construction may be more consistent with the statute's legislative purpose. *Whittaker v. McClure*, 891 S.W.2d 80, 83 (Ky.1995). "Our ultimate goal when reviewing and applying statutes is to give effect to the intent of the General Assembly. We derive that intent from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Commonwealth v. Wright*, 415 S.W.3d 606, 609 (Ky.2013).

The Court of Appeals concluded that a valid claim under the whistleblower act did not require the disclosure (or threat of disclosure) of a matter touching upon public interest, as long as the disclosure otherwise fit the statute's description of a protected report. In so holding, the Court of Appeals relied principally upon two factors. First, there is no language in the statute expressly limiting its protection to matters that contain a public interest nexus. Second, mindful that the statute lacked an express reference to a public nexus, the Court of Appeals gave particular attention to the clause of KRS 61.102(1) protecting the divulgence of "*any* facts or information relative to an actual or suspected violation of any law," and "*any* facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority." (emphasis added). Because the Court of Appeals found no ambiguity in the plain language of the statute, it found no reason to rely upon interpretations of similar laws enacted by Congress and the legislatures of other states, some of which explicitly provided a "public interest" requirement.

The reasoning of the Court of Appeals is further strengthened by the legislature's inclusion of the clause "or any facts or information relative to ... a substantial and specific *danger to public health or safety*." (emphasis added). This express inclusion of a public nexus when matters of health and safety are involved, where no public nexus is otherwise mentioned, suggests that the General Assembly intended to impose that requirement as to one area of concern but not to the others.

■ We agree with the Court of Appeals' analysis of KRS 61.102; there is no requirement in the statute that protected reports and disclosures must touch upon a matter of public concern. Obviously, in the usual case, an action brought under KRS 61.102 is likely to touch on a matter

of public concern, if only because matters of "waste, fraud, abuse of authority" and "violations of the law" affecting public employees, by virtue of their employment, are more likely to be matters of public interest and concern. But, we conclude that the protections afforded by the statute are limited only by the language of the statute and there is no requirement limiting the protections of KRS 61.102 to disclosures that touch on a matter of public concern.

 PACS argues that under this construction of the statute, a state employee might receive whistleblower protection if he was fired for divulging to the police that his boss violated the law against littering on the way to work, or some other matter devoid of public concern. We agree that such extraordinary, if unlikely, circumstances may arise. While some may doubt the prudence of a law that allows such an action, it is not the role of the judiciary to pass upon the wisdom of a statute. Our constitutional authority is to ascertain the meaning of the statute, based not upon what the legislature may have intended to say, but upon the meaning of what it did say. Similarly, we do not go about interpreting a statute by evaluating the most extreme scenario in which it may be applied. In its wisdom, the legislature implemented a public policy of protecting state employees who report, divulge, or disclose *any* violation of the law, or *any* facts or information relative to "mismanagement, waste, fraud, abuse of authority" without regard to whether a public interest is involved.

## B. KRS 61.102 and Conduct That Constitutes a Protected Disclosure

Drawing upon the reasoning of Judge Maze's dissenting opinion in the Court of Appeals, PACS argues that the summary judgment dismissing Rogers's claim was proper because Rogers's inquiry of the deputy sheriff and her comments to Gibbs at the PACS staff meeting were not disclosures protected by the statute. We agree with that analysis.

A state employee engages in whistleblowing within the meaning of KRS 61.102 when he or she "in good faith reports, discloses, divulges, or otherwise brings to the attention of [government officials] any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance[.]" KRS 61.102(1).

We have never specifically addressed what constitutes a protected disclosure under KRS 61.102. "Disclosure" is defined in KRS 61.103(1) as "a person acting on his own behalf, or on behalf of another, who reported or is about to report, either verbally or in writing any matter set forth in KRS 61.102." As such, the statute's definition of "disclosure" is not of much help beyond stating that a report need not be in writing and need not be completed, so long as the report was imminent.

Rogers argues that a report or disclosure occurred when: 1) she went to the sheriff's office; 2) she confronted Gibbs about coming to her house at the PACS meeting; and 3) she "threatened" Gibbs with legal action if he came again onto her property uninvited. We find that none of these factual situations is a disclosure within the meaning of KRS 61.102.

 We begin by addressing Rogers's argument that her discussion with the deputy sheriff concerning the legality of Gibbs's practice was a disclosure within the meaning of the statute. In her deposition, Rogers admits that she did not file a report or pursue any type of legal action at the time she spoke with the deputy. She approached the deputy ostensibly for legal advice. Rogers testified in her deposition,

"I did not go [to the sheriffs office] to report at that time any damage or anything he done. I just went to get some advice and learn what the law was." She did not report Gibbs for what she suspected was a violation of the law, or fraud, waste, or mismanagement; nothing in the record even indicates she mentioned Gibbs's name. Rogers was not reporting, disclosing, or divulging anything; she was simply asking a rather generic question about property and privacy rights.

■ Notwithstanding the conversation with the deputy, Rogers maintains she made a "good faith report or disclosure" in two distinct ways during the PACS meeting. First, Rogers's comments during the meeting constituted an "internal disclosure"; and second, she implicitly threatened Gibbs with legal action if he came on her property again.

According to her deposition, Rogers told Gibbs at the staff meeting, "I just know that you came to my husband and my house, you know, you messed up our driveway. It kind of left us upset because we had to fix it. You know, we didn't give you a reason to come to our house." When Gibbs asserted that he could, indeed, go to her house, and he apologized for "messing up" her driveway, Rogers said, "I know that you know that I talked to the sheriff's department. They told me it was illegal for anyone—it don't matter if you're an employer or boss, you cannot trespass on private property, and they can arrest you whether you're still there or not."

It is difficult to fit Rogers's words into the statutory language. Each of the words used in the statute to denote the protected conduct of the employee, "reports, discloses, divulges, or otherwise brings to the attention of ..." describes behavior that brings to light facts not otherwise known to the recipient. Gibbs was obviously well aware of what Rogers was complaining about. Furthermore, there was no one at the meeting with supervisory authority over Gibbs to whom Rogers could have been addressing these comments for some kind of corrective action. The phrases "in good faith" and "brings to the attention of" clearly denotes an intent on the part of the employee to reveal or impart what is known to the employee to someone else who lacks that knowledge and, as further discussed below, is in a position to do something about it.

In *Boykins v. Hous. Auth. of Louisville,* 842 S.W.2d 527 (Ky.1992), we held that a negligence action filed by an employee on behalf of her infant son against the housing authority, which was also her employer, could not be considered a report or disclosure within the meaning of the whistleblower statute. We reasoned that the gravamen of the complaint was not *intended* as a report of information regarding alleged violations of law, mismanagement, or endangerment of public health by employer, but rather was a simple negligence action. *Id.* at 528. In similar fashion, Rogers's verbal complaints were not a report or disclosure intended to bring to light fraud, waste, mismanagement, or violations of the law; they were simply Rogers's expression of a personal grievance against Gibbs about his trespass upon her driveway. We do not, as the dissent suggests, interject a new element into the statute. Rather, we simply recognize that inherent in the meaning of the words chosen by the legislature is the concept that the claimant intended to expose wrongdoing that was otherwise concealed.

First, Rogers asserts that her discourse at the PACS meeting was an "internal disclosure" of the kind found in *Workforce Dev. Cabinet v. Gaines,* 276 S.W.3d 789 (Ky.2008). In *Gaines,* we held that the phrase in KRS 61.102, "any other appropriate body or authority," means a body or

authority with the power to remedy or report the perceived misconduct. *Id.* at 793. We went on to say that the whistleblower statute applied even if the "appropriate authority" was within the agency where the wrongdoing was occurring. *Id.*

It is significant though, that in *Gaines,* the internal report was not made to the alleged wrongdoers, but to a government attorney working in the same department, who in turn reported the alleged wrongdoing to a higher-level government employee within the department. In the instant case, the perceived wrongdoer, Gibbs, was the highest-ranking person at the meeting. Rogers made no effort to bring her claim to the attention of anyone with the power to remedy or report Gibbs's behavior. Rogers was merely expressing to her boss her displeasure about a practice. She did not intend to "report," "divulge," or "disclose" anything by discussing this practice with the offending boss in front of her coworkers. An otherwise at-will employee cannot gain whistleblower status, and the protections that come with that status, by simply complaining to her boss about what she perceives as his misconduct.

Rogers further argues that her comments at the staff meeting constituted a threat, warranting protection under KRS 61.102. Rogers cites to *Consolidated Infrastructure Management Authority, Inc. v. Allen,* 269 S.W.3d 852 (Ky.2008), which contains the statement that "disclosure not only occurs when a report is *actually* made, but also when *the threat* of a report is made." *Id.* at 856.

In *Allen,* we held that a letter from a state employee to his supervisor threatening to report safety violations to Kentucky OSHA if those violations were not remedied constituted a disclosure within KRS

61.102 and 61.103.[3] Reading those two statutes in conjunction, we held that the whistleblower protections extend not only to actual disclosures and reports, but also to threats to report or disclose.

The case at bar is readily distinguished from *Allen.* Rogers did not threaten Gibbs with legal action for his past misconduct. At most her statement at the staff meeting, "you cannot trespass on private property, and they can arrest you if you're still there or not," can be construed as a warning *not to come upon her property in the future* without permission; the closest she gets to an explicit threat is that statement. We are not aware of any context in which those words would be construed as a "threat" to report, disclose, or divulge misconduct.

In summation, we conclude that Rogers's inquiry, directed to the sheriff's office, for an opinion on the legality of Gibbs's behavior does not constitute a report, disclosure, or divulgence triggering the whistleblower protections of KRS 61.102; and, her confrontation with Gibbs at the PACS staff meeting, expressing her objection to his entry upon her property does not constitute a report, disclosure, or divulgence triggering the whistleblower protections of KRS 61.102. Her comments comport with neither the statutory language of KRS 61.102, nor the purpose underlying the statute, as stated in *Gaines,* "to discourage wrongdoing in government, and protect those who make [such wrongdoing] public." 276 S.W.3d at 792.

### III. CONCLUSION

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the

---

**3.** KRS 61.103(1)(a): "Disclosure" means a person acting on his own behalf, or on behalf of another, who reported or is about to report, either verbally or in writing, any matter set forth in KRS 61.102.

summary judgment of the Perry Circuit Court dismissing Appellee's complaint is hereby reinstated.

All sitting. Minton, C.J., Abramson, Cunningham, Keller and Venters, JJ., concur. Noble, J., dissents by separate opinion.

## NOBLE, J., DISSENTING:

Katricia Rogers frequently worked out of the office. Her supervisor, suspicious that she was not actually working at these times, went to her home during the workday and caused damage to her driveway. Rogers, believing her supervisor had illegally trespassed on her posted land, later informed him of that belief and implied to him that she would seek prosecution if he did it again. She was fired the next day. Despite these simple facts showing a colorable claim of retaliation, the majority holds that Rogers is not entitled to the protection of the so-called Whistleblower Act, KRS 61.102. I cannot join that holding and for that reason dissent.

The Act is broadly drafted to protect government employees who report perceived wrongdoing in good faith. Specifically, it protects any government employee

> who in good faith reports, discloses, divulges, or otherwise brings to the attention of ... any ... appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, [or] statute ... of ... the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

KRS 61.102(1). Such an employee is not "subject to reprisal," *id.* and the employer may not "directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any [such] employee," *id.*

The majority disposes of Rogers's claim that she is covered by the statute by concluding that she did not engage in the type of conduct protected by the Act (e.g., reporting or disclosing) and did not communicate with an appropriate authority (e.g., her supervisor's boss). But to reach this conclusion, the majority has in both instances read into the Act something that is not there.

First, the majority reads the protected-conduct language to require that the employee "bring to light facts not otherwise known to the recipient." But that is not required by the Act. That a supervisor already knows a fact does not mean that a subordinate has not reported, disclosed, or brought the fact to the supervisor's attention when she tells the supervisor of the fact. The conduct described in the Act is that of the reporting employee; it in no way depends on the knowledge of the recipient. Indeed, if that were the case, whistleblower claims could easily be defeated by collusion between the person engaged in the bad conduct and the person to whom it is reported, with the reporter being completely innocent. Or, in a less nefarious way, whistleblower claims could be defeated if the reporter is simply not the first person to report the misconduct: the first reporter would be protected, but all others would be fair game for reprisal.

But even if the reporter had to bring information to light that was previously unknown, Rogers did so. Although her supervisor obviously knew what he had done (entering her property), he may not have been aware that it might be illegal. In fact, he told Rogers that he could go to her house to confirm that she was working

anytime he wished to do so. Rogers replied that the entry onto her property, which had a "private property" sign, was an illegal trespass, which she believed it to be. The information brought to light was the illegality of the conduct, not the conduct itself.

Second, the majority reads the requirement that the report of bad conduct be made to an "appropriate body or authority" to exclude reporting to the person engaged in the alleged illegal conduct. In other words, under the majority's reading, the report must be made to a third party, such as the supervisor's supervisor or some other person or entity with authority over the supervisor (such as law enforcement). Although such reporting is covered by the Act, again it is not required.

The Act requires only that the report be made to an appropriate body or authority. What more direct authority can there be than the person committing the complained-of act? The supervisor was directly responsible for his own conduct, and thus is an appropriate authority. As we have held, "appropriate authority" includes "any public body or authority *with the power to remedy* or report the perceived misconduct." *Workforce Development Cabinet v. Gaines,* 276 S.W.3d 789, 793 (Ky.2008). Just as "the most obvious public body with the power to remedy perceived misconduct is the employee's own agency (or the larger department or cabinet)," *id.* at 793, the most obvious person with the power to remedy the misconduct within the agency is the alleged wrongdoer himself. Perhaps the supervisor was unaware that his conduct could be illegal. If so, then reporting it to him, rather than further up the chain of command, would allow "minor wrongdoing [to] be addressed internally," *id.* a practice this Court has approved as falling within the Act's protection, *id.*

This case is, in many ways, similar to *Gaines.* There, we held that internal reporting was covered by the Act, and that a reporter was not required to contact an external entity to be protected. *Id.* Just as the Act's protection extends to internal reporting, so too should it extend to directly reporting the illegality to the wrongdoer.

The majority attempts to distinguish *Gaines,* however, by noting that the report in that case was not made to the alleged wrongdoers but to an attorney working in the department, who then reported the matter higher up. But the reasoning for allowing internal reporting to be protected applies just as strongly—if not more so— to bringing the claimed illegality directly to the wrongdoer's attention, especially when minor wrongdoing (like mostly harmless trespassing) is at issue. As we noted in *Gaines,* "An internal report is often the logical first step, and in many cases may be the only step necessary to remedy the situation." *Id.* at 794. But just as likely, the first logical step, if the goal is to remedy the bad conduct, would be to bring it to the perpetrator's attention—and in many instances, this too may be the only step necessary to remedy the situation.

*Gaines* pointed out that it would be absurd to allow an employee to be punished for internally reporting wrongdoing before proceeding to a third-party investigative or enforcement agency (such as legislature or the police, other proper entities listed in the Act). That applies here. It would be absurd if Rogers's conduct would have been protected if she went to her boss's boss, and possibly created substantial ill will in her department as a result, but is not protected because she went straight to the source of the illegality, which might have resolved the situation amicably. Indeed, it is often considered impolitic to go over a person's head to report suspected

wrongdoing rather than going to the person first. But the majority's reading of the Act requires such a breach of protocol for the reporting to be protected.

There is no reason to believe the Act does not anticipate this common practice— and protect it. And there is no question that the plain language of the Act would allow it.

Like in *Gaines*, "[t]his interpretation serves the goals of liberally construing the Whistleblower Act in favor of its remedial purpose, and of giving words their plain meaning." *Id.* at 793. The majority relies heavily on a statement from *Gaines* that the purpose of the Act is "to discourage wrongdoing in government, and to protect those who make it public." *Id.* But that is not its only purpose.

Behind both of these goals is the assumption that reporting will lead to the illegality being corrected. That is the underlying purpose of the Act, which is supported by protecting those who bring such conduct to public light. But making the illegality public is not the only way to accomplish the underlying goal. Thus, *Gaines* held that *internal* reporting was protected, even though such reporting may not result in public disclosure of the wrongdoing.

Though it may not always be successful, especially where as here there is already bad blood between the reporter and the alleged wrongdoer, in many instances bringing the illegality to the possibly innocent-minded wrongdoer may put an end to the wrongdoing. If, instead of firing Rogers, the supervisor in this case had stopped going on to employees' property, then the goals of the Act would have been met in this case. The reporting would have led to the end of conduct suspected to be illegal. This is true whether the act reported was in fact illegal or not. Rogers believed that it was, relying on what a

sheriff had told her. This is all the Act requires and is precisely the type of conduct the Act protects.

Instead, the supervisor chose to fire Rogers. While there is a substantial question as to the motive for that termination, there is at least some proof that it stemmed from what Rogers said to her supervisor.

The majority has withdrawn the Whistleblower Act's protection from conduct like Rogers's in this case and instead protected the supervisor's conduct. In so doing, the majority ignores the plain meaning of the Act's language. I would instead affirm the decision of the Court of Appeals.