RENDERED:  FEBRUARY 20, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0457-MR


JERRY SKINNER                                                    APPELLANT


|        | APPEAL FROM JEFFERSON CIRCUIT COURT |
| :----- | :--------------------------------- |
| v.     | HONORABLE SUSAN SCHULTZ GIBSON, JUDGE |
|        | ACTION NO. 18-CI-002948            |


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT; CATHY M.
DUNCAN; JESSICA THORNTON;
AND KYLE FEENEY                                                  APPELLEES



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE:  Jerry Skinner appeals from a summary judgment entered by

the Jefferson Circuit Court in favor of Louisville/Jefferson County Metro

Government and three of its employees, Cathy M. Duncan, Jessica Thornton, and

Kyle Feeney (collectively, "Louisville Metro"), on his claims under the Kentucky

Whistleblower Act ("KWA"), KRS[1] 61.101 *et seq*.  Skinner alleged that he was terminated from his employment in violation of the KWA, for reporting that Louisville Metro's Fleet & Facilities Department ("FFD") failed to obtain electrical permits and inspections required by law for certain electrical work performed in-house.

On appeal, Skinner argues that his communications regarding the permitting issue constituted protected disclosures under the KWA and that the circuit court erred in granting summary judgment.  Louisville Metro responds that Skinner did not disclose non-public information, did not report alleged wrongdoing to a qualifying authority within the meaning of the Act, and failed to present evidence that any protected disclosure was a contributing factor in his termination.

After careful review of the record and applicable law, we affirm.

## I. BACKGROUND

### A.  *The Parties and Witnesses*

Skinner is a licensed master electrician with extensive prior experience as an electrical inspector.  Before the events giving rise to this litigation, Skinner worked for Louisville Metro's Department of Codes and

---

[1]  Kentucky Revised Statutes.

Regulations ("DCR"),[2] including service as an Assistant Chief Electrical Inspector. He later worked as an electrical inspector for the Commonwealth of Kentucky.

Louisville Metro, through FFD, is responsible for maintaining and repairing government-owned buildings throughout Jefferson County. The Facilities Division within FFD performs in-house electrical, mechanical, and general maintenance work at public facilities. At all relevant times, Cathy Duncan served as Director of FFD; Jessica Thornton served as Administrator of the Facilities Division; and Kyle Feeney served as Maintenance Manager and was Skinner's direct supervisor while he worked there. Carl Hamm is a former employee of FFD's Facilities Division. Before his retirement in September 2017, Hamm worked as a facilities maintenance electrician for three years.

Troy Crawford was Louisville Metro's Chief Electrical Inspector within the DCR during the relevant time period, and supervised Skinner when he worked at DCR.

## B. The Electrical Permitting Framework

At issue in this case is whether Skinner's communications with Duncan, Thornton, Feeney, and Crawford regarding FFD's failure to obtain

---

[2] DCR is the agency authority authorized to enforce the Kentucky Building Code by administering the inspection process for electrical construction taking place within the county.

electrical permits in violation of applicable statutes and local ordinances constituted protected disclosures under the KWA.

To place this issue in the proper context, some background regarding the electrical permitting process is necessary. The relevant statute, KRS 227.480, provides in relevant part that:

> (1)(a) A city, county, urban-county government, charter county, or consolidated local government or the state shall, according to the Uniform State Building Code as it pertains to the plan review and inspection responsibilities of local governments or the state, require any person to obtain a permit before commencing construction, alteration, or repairs of any electrical system.
>
> (b) The city, county, urban-county government, charter county, or consolidated local government or the state shall require all inspections that are deemed necessary by the department for the safety of life and property. The department shall promulgate administrative regulations to describe the circumstances where inspections are required.
>
> (2) A city, county, urban-county government, charter county, or consolidated local government or the state shall not issue a permit unless the applicant submits proof of being licensed as an electrical contractor under KRS Chapter 227A or of acting on behalf of a licensed electrical contractor. ***However, the provisions of this subsection shall not apply to:***
>
> . . .
>
> ***(b) Electrical work performed by the Commonwealth of Kentucky, a city, county, urban-county government, charter county, or consolidated local government, or any subdivision thereof*[.]**

(Emphasis added.)

The interpretation most consistent with the statutory language is that while Louisville Metro is required under subsection (1) to obtain permits and inspections before commencing construction, alteration, or repair of an electrical system, it is exempt under subsection (2) from the requirement that a permit applicant submit proof of licensure as an electrical contractor. For purposes of evaluating summary judgment, we assume, without deciding, that this interpretation is correct.

The exemption in KRS 227.480(2)(b) for electrical work performed by an urban-county government nevertheless created uncertainty within FFD during the relevant period regarding whether permits were required at all before in-house electrical work was performed. Before Skinner was hired, FFD supervisory personnel, including, among others, Thornton, Feeney, and Duncan, discussed whether electrical permitting requirements applied to in-house work performed on government-owned buildings. Discovery revealed that some employees believed permits were required for at least certain categories of electrical work. Former FFD employee Carl Hamm submitted an affidavit stating that he believed permits were required for installations and upgrades and that he had raised those concerns multiple times with FFD management before Skinner's employment.

Given the uncertainty before Skinner's employment, FFD sought guidance from the Jefferson County Attorney's Office. After reviewing the issue, the County Attorney advised that FFD was exempt from the permitting and inspection requirements because the electrical work at issue was performed by Louisville Metro employees on government-owned buildings. FFD thereafter continued its existing practices in reliance on that advice.

## C. *Skinner's Hiring and Early Employment*

Skinner applied for a Maintenance Supervisor position within the Facilities Division in late 2017. He was interviewed twice in December 2017. During the second interview, Skinner learned that FFD did not routinely obtain electrical permits for in-house work. Based on his experience as an electrical inspector, Skinner expressed concern that permits were required. Duncan responded that the issue had already been reviewed and that the Jefferson County Attorney's Office had advised that permits were not required. Skinner accepted the position with that understanding and began employment on January 8, 2018.

After beginning work, Skinner reviewed work orders assigned to his maintenance crew and concluded that some of the electrical work involved installations or upgrades that, in his view, required permits and inspections.[3]

---

[3] These work orders included removing and replacing breaker panels at multiple Metro facilities, installing new electrical outlets and systems at workspaces and maintenance shops, repairing

Skinner raised these concerns with Feeney and Thornton, both of whom deferred to Duncan's position that FFD was exempt from permitting requirements.

### D. Communications with Crawford and Internal Follow-Up

In February 2018, Skinner contacted Troy Crawford, the DCR's Chief Electrical Inspector and Skinner's former supervisor, to ask whether FFD's electrical work required permits and inspections. Crawford reviewed the applicable statutes and ordinances and responded by email, providing materials supporting Skinner's interpretation that permits were required for certain types of work. Skinner forwarded Crawford's email to Feeney and Thornton.

Discovery revealed that after receiving Crawford's email, FFD supervisors discussed whether the issue should be reconfirmed with the Jefferson County Attorney's Office. No immediate overall policy change in permitting practices occurred, although emails make clear that Skinner's supervisors were working toward obtaining permits, at least for some projects, and were actively reevaluating their prior interpretation of the legal statutes and ordinances.

### E. Termination and Post-Employment Events

Skinner continued to express concern regarding the lack of permits and inspections for certain electrical work; it appears that these concerns were

damaged underground wiring at Public Works facilities, and replacing breaker panels at Louisville Metro City Hall.

addressed to his supervisors. In March 2018, he created an online account with the DCR to facilitate permit requests for work performed by him.

On April 12, 2018, Skinner was informed that his employment was being terminated for failure to successfully complete his probationary period. He received a termination letter, but he had not been issued any prior formal written disciplinary warnings. Discovery revealed, however, that Skinner had been reprimanded by Thornton through text messages for failing to properly supervise his subordinates. The record also includes written work plans and a one-on-one review, all of which mentioned the supervision issue.

After his termination, Skinner applied for another position within Louisville Metro but was not selected. He later alleged that the failure to rehire him was retaliatory and based on his filing of the underlying KWA action against Louisville Metro.

## F. Procedural History

Skinner filed this action in May 2018, asserting claims under the KWA and for wrongful discharge in violation of public policy. The circuit court dismissed the wrongful-discharge claim at the pleading stage, concluding that the claim was barred by the doctrine of sovereign immunity.[4]

---

[4] Skinner has not appealed the dismissal of his wrongful-discharge claim.

During discovery, Skinner moved to amend his complaint to add a second KWA claim after Crawford testified in his deposition that Skinner was not rehired at the DCR because of his pending whistleblower lawsuit. Skinner alleged that this testimony established a separate instance of retaliation under the KWA based on post-termination conduct. The circuit court granted Skinner's motion to amend.

Thereafter, Skinner moved for partial summary judgment on the newly added claim. Louisville Metro responded by filing its own motion for summary judgment, seeking judgment in its favor on both of Skinner's KWA claims. Following briefing and oral argument, the circuit court entered a lengthy and well-reasoned opinion granting summary judgment in favor of Louisville Metro on both claims.

As a threshold matter, the circuit court concluded that Skinner failed to establish the required causal connection between any alleged protected disclosure and his termination. The court determined that Louisville Metro demonstrated that Skinner's termination resulted from his failure to properly supervise subordinates during his probationary period, rather than from any alleged protected disclosure, and that Skinner failed to present sufficient evidence to rebut that showing.

Alternatively, the circuit court concluded that Skinner's communications with his supervisors did not constitute protected disclosures because they were directed to the individuals allegedly responsible for the conduct at issue and did not involve the disclosure of non-public information, as FFD's permitting practices were widely known within the organization and consistent with guidance received from the Jefferson County Attorney's Office. The court further concluded that Skinner's communications with Crawford did not constitute a report under the KWA because Skinner was seeking confirmation and guidance regarding the interpretation of the applicable statutes and ordinances, rather than reporting concealed wrongdoing. Finally, the circuit court concluded that the KWA does not extend to post-employment retaliatory conduct, rendering Count II of Skinner's amended complaint non-actionable.

This appeal followed.

## II. STANDARD OF REVIEW

This appeal is taken from an order granting summary judgment. We review a circuit court's grant of summary judgment *de novo*. *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016); *Wolfe v. Kimmel*, 681 S.W.3d 7, 12 (Ky. 2023). Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

-10-

law." CR[5] 56.03; *Hill v. State Farm Mut. Auto. Ins. Co.*, 709 S.W.3d 232, 236-37 (Ky. 2025). Because summary judgment involves no fact-finding, we afford no deference to the circuit court's legal conclusions. *State Auto Prop. & Cas. Co. v. Greenville Cumberland Presbyterian Church*, 706 S.W.3d 35, 43 (Ky. 2024).

### III. ANALYSIS

The dispositive issue in this appeal is whether Skinner made a protected disclosure within the meaning of the KWA. Absent a protected disclosure, Skinner cannot establish a *prima facie* claim under the KWA, and summary judgment was proper. Accordingly, our analysis focuses solely on whether Skinner's communications concerning the electrical permitting issue qualify as protected disclosures under KRS 61.102.[6]

The KWA, codified at KRS 61.101 *et seq.*, was enacted in 1986 to encourage public employees to come forward with information regarding governmental wrongdoing by protecting them from retaliation for doing so. *N. Ky. Area Dev. Dist. v. Wilson*, 612 S.W.3d 916, 920 (Ky. 2020). The statute prohibits a public employer from taking adverse action against an employee who, in good

---

[5] Kentucky Rules of Civil Procedure.

[6] The parties raise additional arguments on appeal, including whether Skinner's alleged disclosures were a contributing factor in his termination and whether the KWA affords protection to former employees for alleged post-termination retaliation. Because Skinner failed to establish that he made a protected disclosure under the KWA, those arguments are moot, and we do not address them.

faith, reports or discloses information relating to an actual or suspected violation of law, waste, fraud, or a substantial and specific danger to public health or safety. KRS 61.102(1).

Because the KWA serves the public purpose of identifying and deterring governmental misconduct, it is remedial in nature and must be liberally construed to effectuate that purpose. *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 793 (Ky. 2008). At the same time, the statute does not create a general cause of action for every workplace grievance or policy disagreement involving a public employer. *Harper v. Univ. of Louisville*, 559 S.W.3d 796, 801-03 (Ky. 2018). Rather, its protections are directed toward disclosures that further the public interest by exposing governmental wrongdoing. *Id.*

To establish a violation of KRS 61.102, an employee must demonstrate four elements: (1) the employer is an officer or entity of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good-faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making it. *Davidson v. Commonwealth, Dep't of Mil. Affs.*, 152 S.W.3d 247, 251 (Ky. App. 2004).

Kentucky courts have consistently held that the KWA protects employees who expose governmental wrongdoing that is concealed or not generally known, and not those who merely reiterate information already known to the employer. *Harper*, 559 S.W.3d at 802-03. In *Davidson*, this Court affirmed summary judgment where the employee alleged wrongdoing but "did not report anything . . . which was not already known," such as secretive or hidden agency procedures. *Davidson*, 152 S.W.3d at 255. *Davidson* thus establishes that the disclosure of information already known to the employer and others does not necessarily satisfy the third element of a KWA claim.

The Supreme Court reaffirmed this principle in *Harper*, holding that the KWA is intended to protect "the whistleblower who exposes information not generally known," and that the reporting of information "which is public information or otherwise already widely known within the organization cannot qualify as a whistleblower disclosure." *Harper*, 559 S.W.3d at 802. In *Harper*, the employee's complaints concerned matters that had already been raised, reviewed, and addressed within the university, and therefore did not constitute protected disclosures under the statute.

Similarly, in *Moss v. Ky. State Univ.*, this Court held that a university employee's allegations regarding accounting violations were not actionable under the KWA because the university was already aware of the accounting issue and

-13-

was attempting to address it. *Moss v. Ky. State Univ.*, 465 S.W.3d 457, 458 (Ky. App. 2014). As we explained, where the employer is already cognizant of the alleged wrongdoing, the employee's complaints "were hardly an initial report" within the meaning of the statute. *Id.* at 460.

In *Admin. Off. of Cts. v. Miller*, the Supreme Court underscored that whether an employee disclosed non-public or concealed information is a question of law. There, the Court held "as a matter of law" that the employee did not make a protected disclosure because she failed to report "previously concealed or non-public information that would entitle her to protection under KRS 61.102." *Admin. Off. of Cts. v. Miller*, 468 S.W.3d 323, 324 (Ky. 2015). *Miller* confirms that summary judgment is appropriate where the undisputed facts demonstrate that the alleged disclosure did not reveal concealed wrongdoing.

Finally, *Helbig v. City of Bowling Green* illustrates that a disagreement over the legality of a publicly known policy does not constitute a protected disclosure. *Helbig v. City of Bowling Green*, 371 S.W.3d 740 (Ky. App. 2011). In *Helbig*, a police officer filed a grievance asserting that a newly adopted overtime policy violated a state statute. The Court rejected the whistleblower claim because the policy and the statute allegedly violated were both publicly available and widely known, explaining that the KWA was not "needed to encourage employees to disclose the illegality of a city commission's publicly

enacted policy." *Id.* at 743. Rather, such disputes are properly resolved through other legal mechanisms, such as declaratory actions.

Applying these principles to the undisputed facts, Skinner's communications regarding FFD's electrical permitting practices did not constitute protected disclosures under the KWA. The record establishes that FFD's practice of performing in-house electrical work without obtaining permits was widely known within the organization well before Skinner's employment. FFD supervisory personnel, including Duncan, Thornton, and Feeney, were aware of the practice and had discussed whether permitting requirements applied to in-house work on government-owned buildings. Former employee Carl Hamm stated in an affidavit that he had raised the same concerns with FFD management multiple times before Skinner was hired. Skinner himself learned of the practice during his second interview in December 2017, before he began work, when Duncan informed him that the issue had already been reviewed.

Moreover, FFD did not attempt to limit its practice to those inside the organization. Before Skinner's employment, FFD sought and obtained guidance from the Jefferson County Attorney's Office, which advised that FFD was exempt from permitting and inspection requirements for in-house electrical work on government-owned buildings. FFD continued its existing practices in reliance on that legal advice. The fact that the issue had already been elevated to an external

legal authority for review, and that FFD acted in accordance with the advice received, further demonstrates that the practice was neither concealed nor unknown.

Skinner's communications thus did not expose hidden or secretive wrongdoing. Rather, they expressed a professional disagreement with an openly maintained interpretation of the applicable statutes, one that had already been vetted by the Jefferson County Attorney's Office. Except Crawford, every individual to whom Skinner directed his concerns was already aware of the permitting question and of FFD's position.[7] After receiving Crawford's email, FFD supervisors actively discussed whether to reconfirm the issue with the County Attorney's Office and began working toward obtaining permits for at least some projects. Skinner's concerns, however valid they may have been as a matter of electrical code interpretation, were not an initial report of concealed wrongdoing. *See Moss*, 465 S.W.3d at 458.

While FFD's permitting practice was not memorialized in a publicly enacted ordinance as was the case in *Helbig*, the operative principle is the same: where the challenged conduct is openly maintained and known to those in authority, an employee's disagreement with its legality does not constitute the type of disclosure the KWA was designed to protect. Skinner's dispute with FFD's

---

[7] Given that Crawford was unaware, we will separately analyze that communication below.

interpretation of KRS 227.480 was, at bottom, a legal disagreement properly resolved through other channels. Because the undisputed facts establish that Skinner's communications did not reveal concealed or non-public information, they did not constitute protected disclosures under KRS 61.102, and summary judgment was properly granted on this basis. *Harper*, 559 S.W.3d at 802.

Skinner's communication with Crawford presents a different issue. The record reflects that Crawford, as Chief Electrical Inspector within DCR, possessed authority to enforce the applicable electrical permitting and inspection requirements. The record further reflects that, prior to his communication with Skinner, Crawford was unaware that the Facilities Division was not obtaining permits and inspections for certain in-house electrical work.

In *Pennyrile Allied Cmty. Servs., Inc. v. Rogers*, the Supreme Court addressed the distinction between a protected whistleblower disclosure and an inquiry or request for guidance regarding the legality of conduct. 459 S.W.3d 339 (Ky. 2015). There, the employee believed her supervisor had engaged in wrongful conduct and contacted the sheriff's office to seek an opinion regarding the legality of the supervisor's actions. She later confronted the supervisor at a staff meeting and expressed her objections. After her termination, she asserted a claim under the KWA.

The Supreme Court held that neither the inquiry to the sheriff's office nor the confrontation with the supervisor constituted a report, disclosure, or divulgence within the meaning of KRS 61.102. The Court emphasized that the employee had not reported concealed wrongdoing or sought to expose misconduct to a body empowered to remedy it. Rather, she had sought an opinion regarding the legality of the conduct and then expressed her disagreement directly to the individual involved. Such actions, the Court explained, "comport with neither the statutory language of KRS 61.102, nor the purpose underlying the statute," which is "to discourage wrongdoing in government, and protect those who make [such wrongdoing] public." *Id.* at 346 (quoting *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 792 (Ky. 2008)) (internal quotation marks omitted).

The same reasoning applies here. During his deposition, Skinner testified that he contacted Crawford to "cover his bases" and to ensure that he was not unaware of a statute that might exempt Louisville Metro from the permitting requirements. Skinner further testified that he was "verifying [his] knowledge" and that Crawford confirmed his understanding that permits were required. This testimony reflects that Skinner sought confirmation and guidance regarding a debatable legal issue, not that he reported concealed wrongdoing or alerted Crawford to ongoing unlawful conduct. Likewise, Crawford's response is telling. Crawford emailed the relevant legal authority to Skinner, including his handwritten

-18-

notes. This response further indicates that Skinner's communication with Crawford was an inquiry seeking his opinion and not a report.

Consistent with *Pennyrile*, an employee's request for an opinion or verification regarding the legality of conduct, even if motivated by a sincere belief that the conduct is improper, does not constitute a protected disclosure under the KWA. Nor does forwarding the resulting information to management, without more, transform such an inquiry into a report or disclosure within the meaning of KRS 61.102.

Notably, the record does not indicate that Skinner subsequently reported to Crawford that FFD continued to perform electrical work without permits after receiving this information. Accordingly, Skinner's communications with Crawford do not constitute protected disclosures under the KWA.

Because Skinner failed to establish that he made a protected disclosure under the KWA, he cannot prevail on his whistleblower claims as a matter of law. Accordingly, we do not address the parties' remaining arguments, including whether Skinner's alleged disclosures were a contributing factor in his termination or whether the KWA affords protection to former employees for alleged post-termination retaliation.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Jefferson Circuit Court's March 22, 2024 order granting summary judgment to Louisville Metro and dismissing Skinner's amended complaint with prejudice.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Soha T. Saiyed
Louisville, Kentucky

BRIEF FOR APPELLEE:

Cynthia L. Effinger
Louisville, Kentucky