RENDERED:  FEBRUARY 27, 2026; 10:00 A.M.
TO BE PUBLISHED
**OPINION OF JANUARY 16, 2026 WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0029-MR

COMMONWEALTH OF KENTUCKY                                           APPELLANT

v.        APPEAL FROM POWELL CIRCUIT COURT
          HONORABLE LISA HAYDEN WHISMAN, JUDGE
          ACTION NO. 23-CR-00039

ROBERT W. BROCK                                                    APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CETRULO, JUDGE:  The Commonwealth appeals a Powell Circuit Court order
interpreting the newly amended Kentucky Revised Statute ("KRS") 512.020.  The
circuit court held that restitution may be deposited with the clerk of court to hold
until after trial (instead of being paid to the alleged victim prior to trial) in order to
proceed on a class B misdemeanor under KRS 512.020(2)(b).  Limiting our review

to questions of statutory interpretation, and finding the unambiguous language of the statute allows for no such "escrow" scheme, we vacate the circuit court order and remand for further proceedings.

## FACTS & PROCEDURAL BACKGROUND

In January 2023, the Powell County grand jury indicted Robert W. Brock ("Brock") on one count of criminal mischief in the first degree, a class D felony, under KRS 512.020. The indictment stemmed from a criminal complaint against Brock alleging that in November 2020, he used a pellet gun to shoot at his sister and brother-in-law's kitchen window resulting in property damage of $1,675.59.[1] Brock entered a not guilty plea at his arraignment in circuit court and has steadfastly maintained his innocence throughout the case, declining the Commonwealth's offer to dismiss the case upon payment of restitution.

In August 2024, Brock filed a motion with the circuit court opting to proceed under the recently amended KRS 512.020(2)(b),[2] which maintained first-degree criminal mischief class D felony status "unless" a defendant provided full

---

[1] This charge was initially brought in Powell District Court in November 2020 as a misdemeanor for criminal mischief in the second degree under KRS 512.030. The matter was set for jury trial twice, but the case was dismissed without prejudice in October 2022.

[2] *See* KRS 446.110 ("If any penalty, forfeiture or punishment is mitigated by any provision of the new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.").

restitution or its equivalent prior to trial. Once completed, a defendant would be subject to a class B misdemeanor for a first offense. KRS 512.020(2)(b).

Brock did not waive his right to a jury trial and made no concessions regarding his innocence, indicating that his consent to prosecution under the revised statute was premised on reducing his sentencing exposure should he be convicted. The issue then arose over Brock's assertion that he gave $1,500 to his defense counsel to hold in escrow pending the jury's verdict. Brock stated that should he be convicted of the class B misdemeanor, the escrow funds would then be released to the victims as restitution. However, he argued that should he be acquitted of the class B misdemeanor, the escrow funds would then be returned to him. The Commonwealth objected to this "escrow-refund scheme" and argued that a plain reading of KRS 512.020(2)(b) required a defendant to make a victim "whole" *prior* to being able to take advantage of the reduction from class D felony to class B misdemeanor (and the related lessor penalty range).

The circuit court entered its written decision on December 3, 2024, observing that the presumption of innocence prohibited penalizing a person for asserting the right to trial and permitted Brock to proceed under KRS 512.020(2)(b) as amended. Regarding the question of statutory interpretation, the court found that KRS 512.020 as amended contained ambiguities, and the rule of

lenity required the resolution of such in Brock's favor. In conclusion, the circuit

court ordered the following:

> IF Mr. Brock deposits the full amount of alleged restitution . . . with the clerk of court "prior to trial" as the statute states, and if he is convicted at trial – the punishment range would be a class B misdemeanor punishment range and the restitution amount would be forfeited to the alleged victim upon conviction.

The restitution was then paid into court. The Commonwealth brought

this interlocutory appeal pursuant to KRS 22A.020(4).

## STANDARD OF REVIEW

"Matters of statutory construction and interpretation are questions of

law, which this Court reviews *de novo*." *Dep't of Revenue, Fin. & Admin. Cabinet

v. Hale, Inc.*, 707 S.W.3d 522, 525 (Ky. App. 2025) (citing *Pennyrile Allied Cmty.

Servs., Inc. v. Rogers*, 459 S.W.3d 339, 342 (Ky. 2015)).

## ANALYSIS

On appeal, the Commonwealth argues the circuit court erred in

granting Brock's motion, thereby allowing him to proceed to trial on a

*misdemeanor* when he had not qualified for that reduction (due to his

failure/refusal to pay restitution in full to the victims as required by KRS

512.020(2)(b)).

We begin our analysis by stating the "cardinal rule" of statutory

interpretation, which is "that the intention of the legislature should be ascertained

-4-

and given effect." *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (quoting *MPM Fin. Grp., Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009)). *See also* KRS 446.080(1) ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]").

To discern legislative intent, we look first at the language of the statute. *Fell*, 391 S.W.3d at 720 (quoting *Shawnee Telecom Res., Inc., v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)). *See also Seeger v. Lanham*, 542 S.W.3d 286, 291 (Ky. 2018) ("We must look first to the plain language of the statute and, if the language is clear, our inquiry ends."). "Resort to the canons of construction or other extrinsic evidence of the legislature's intent is appropriate '[o]nly if the statute is ambiguous or otherwise frustrates a plain reading[.]'" *Rushin v. Commonwealth*, 701 S.W.3d 293, 298 (Ky. 2024) (alterations in original) (quoting *Shawnee Telecom*, 354 S.W.3d at 551). "We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one[.]" *Fell*, 391 S.W.3d at 718-19 (quoting *Shawnee Telecom*, 354 S.W.3d at 551).

When considering the plain language, we do not carve out from the statute a single word, phrase, sentence, or subsection upon which to narrow the focus of our analysis. *See id.* at 719 (citations omitted). Instead, "[t]he statute must be read as a whole and in context with other parts of the law. All parts of the statute must be given equal effect so that no part of the statute will become

meaningless or ineffectual." *Century Aluminum of Kentucky, GP v. Dep't of Revenue*, 664 S.W.3d 546, 558 (Ky. 2022) (alteration in original) (quoting *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 92 (Ky. 2005)).

This appeal presents a matter of first impression. Turning to the statute at issue, first-degree criminal mischief is defined in KRS 512.020(1), and at the time of Brock's 2023 indictment, required the Commonwealth to prove that a defendant intentionally or wantonly damaged property of another resulting in a monetary loss of $1,000 or more. KRS 512.020(1)(a) (2023). Additionally, at that time, KRS 512.020(2) designated first-degree criminal mischief as a class D felony. It did not contain language creating an option for a reduced penalty range. KRS 512.020(2) (2023).

In 2024, the Kentucky General Assembly amended KRS 512.020(2), adding subsection (b) to provide the following:

> (2) Criminal mischief in the first degree is a Class D felony unless:
>
> . . .
>
> (b) For the first offense, if the defendant at any time prior to trial effects repair or replacement of the defaced, destroyed, or damaged property, makes complete restitution in the amount of the damage, or performs community service as required by the court, in which case it is a Class B misdemeanor. The court shall determine the number of hours of community service commensurate with the total amount of monetary damage caused by or incidental

-6-

> to the commission of the crime, of not less than sixty (60) hours[.]

KRS 512.020(2)(b).

The Commonwealth contends that KRS 512.020(2)(b) presents no ambiguity, and its plain language requires restitution to be paid in full to the victim(s), as opposed to being held by the clerk of court, prior to trial for an accused to avail himself of facing a reduced penalty range. Given that there is no statutory ambiguity, the Commonwealth argues that the rule of lenity is inapplicable.

An ambiguity arises "[w]hen the undefined words or terms in a statute give rise to two mutually exclusive, yet reasonable constructions[.]" *MPM Fin. Grp.*, 289 S.W.3d at 198 (citing *Young v. Hammond*, 139 S.W.3d 895, 910 (Ky. 2004)). Brock argues that KRS 512.020(2)(b) is ambiguous as it does not specify the essential questions of who and how to pay restitution; for instance, should the defendant pay restitution directly to the victim, the Commonwealth, or the clerk of court? Brock claims that an interpretation allowing the circuit court (by means of the clerk of court) to hold the full restitution amount for disbursement to the victim(s) only after a guilty verdict resolves this ambiguity. Otherwise, as Brock maintains, the innocent could be treated more severely than the guilty, either by refusing to pay and facing harsher penalties at trial or by sacrificing funds pretrial with no recourse for recoupment upon acquittal. The unfairness of this Catch-22,

-7-

Brock surmises, could not have been intended by the General Assembly as he argues it constitutes a penalty on asserting the right to trial.

No doubt that there are valid concerns as to the potential "unfair" consequences of the statute; however, on appeal, the Commonwealth's argument is limited, merely challenging the circuit court's statutory interpretation, not the constitutionality of the amended statute. Accordingly, the question before us is one of statutory interpretation: Must an accused pay restitution in full to the victim prior to trial to receive the mitigated benefit of KRS 512.020(2)(b)? Looking at the plain language of the statute and reading all its parts as a whole, the answer is "yes."

Under KRS 512.020(2)(b), a defendant has three options "prior to trial" to be subject to a class B misdemeanor: (1) "effect[] repair or replacement"; (2) "make[] complete restitution"; or (3) "perform[] community service[.]" The statute does not address what happens in the event of an acquittal. In comparison to Brock's argument, options (1) and (3) likewise have no recourse for a defendant to recover his expended efforts. Could an acquitted defendant theoretically seek reimbursement for repair, replacement, or sweat equity? Again, that is not the question before us, and we decline to engage in such speculation. *See, e.g.*, *Beckham v. Bd. of Educ. of Jefferson Cnty.*, 873 S.W.2d 575, 577 (Ky. 1994) (citing *Gateway Constr. Co. v. Wallbaum*, 356 S.W.2d 247 (Ky. 1962)) ("We are

not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used.").

"It is well settled law that a court may not add language to the written law to achieve a desired result." *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010) (citations omitted). The express wording of the statute stands in contrast with Brock's argument and cannot be escaped by only addressing possible complications surrounding the phrase, "makes complete restitution."

We must consider the General Assembly's use of the words, "effects" and "performs," in the context of the statutory provision. When doing so, under option (1), the victim's damaged property would be repaired or replaced; and under option (3), the defendant would have performed no less than 60 hours of community service. The performances required for a class B misdemeanor are satisfied, and the victim, either in an individual or collective-community sense, is made whole.

To permit a defendant choosing option (2) to put the complete amount of restitution on hold pending the outcome of trial suspends the required performance and creates inconsistencies among the statutory options. Given Brock's concerns over disparate treatment, his endorsed approach ignores the fact that it effectively carves out an exception for those defendants – innocent and/or principled – with financial means to expend nothing upfront yet face the same

consequences as those whose only feasible option may be community service. "[W]hen 'there is an apparent conflict between statutes or sections thereof, it is the duty of the court to try to harmonize the interpretation of the law so as to give effect to both sections or statutes if possible.'" *Century Aluminum of Kentucky*, 664 S.W.3d at 558 (quoting *Ledford v. Faulkner*, 661 S.W.2d 475, 476 (Ky. 1983)).

We hold that KRS 512.020(2)(b) is clear and unambiguous, and therefore, need not resort to employing the rule of lenity or other canons of statutory construction. Our decision is not to say that we do not appreciate Brock's predicament of wanting to seek vindication at trial yet reduce his penalty exposure at the same time. This situation, however, is no different than that of weighing acceptance of a plea offer, a context wherein hundreds of thousands of accused individuals are faced with "the unpleasant alternatives of forgoing trial or facing charges on which [they are] plainly subject to prosecution." *Porter v. Commonwealth*, 394 S.W.3d 382, 391-92 (Ky. 2011) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (holding plea offer agreeing to not seek indictment on more serious charges did not violate the Due Process Clause)).

We also understand the circuit court and parties' frustrations in applying a rather unusual criminal statute. Indeed, the amendments to KRS 512.020(2)(b) put the cart before the horse, so to speak, as an order of restitution

and its logistics are matters typically undertaken in the sentencing phase. *See, e.g.*, KRS 532.032-.033; KRS 533.030. That quandary, however, is not before us. *See Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007) (citations omitted) ("It is a fundamental tenet of Kentucky jurisprudence that courts cannot decide matters that have not yet ripened into concrete disputes. Courts are not permitted to render advisory opinions.").

## CONCLUSION

Finding that KRS 512.020(2)(b) is clear and unambiguous, we VACATE the Powell Circuit Court's order and REMAND for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

John Gerhart Landon
Lexington, Kentucky